In re CASCO BAY LINES, INC. Debtor,

Appeal of CASCO BAY LINES, INC. Richard E. Poulos, Peter Kontoratos, Valerie Kontoratos, Appellants.

Bankruptcy Nos. 81–9042, 81–9043, 81–9047 and 81–9048.

United States Bankruptcy Appellate Panel, for the First Circuit.

Feb. 16, 1982.

Richard E. Poulos, Portland, Me., pro se.

P. Benjamin Zuckerman, Portland, Me., with whom Verril & Dana, Portland, Me., was on brief, for appellant Richard E. Poulos.

Louis H. Kormreich, Bangor, Me., with whom Goodman, Goodman & Kornreich, Bangor, Me., was on brief, for appellants Valerie and Peter Kontoratos.

Peter L. Murray, Portland, Me., with whom Murray, Plumb & Murray, Portland, Me., was on brief, for appellees Casco Bay Island Transit District and Casco Bay Island Development Association.

William Humphrey Tucker, Boston, Mass., with whom Christopher W. Parker, Boston, Mass., was on brief, for appellee United States trustee.

Before LAWLESS, C. J., and GLENNON and VOTOLATO, JJ.

## OPINION

PAUL W. GLENNON, Bankruptcy Judge.

Before the panel are four separate appeals which have been consolidated for purposes of a decision, all of which arise either directly or indirectly from a bench order by the bankruptcy court authorizing the appointment of a trustee in the Chapter 11 proceeding of Casco Bay Lines, Inc. The Kontoratoses, the principal stockholders of Casco Bay Lines ("CBL"), joined with CBL in appealing the bankruptcy court's order of September 16, 1981 authorizing the appointment of a trustee under § 1104(a) of the Bankruptcy Code [11 U.S.C. § 1104(a), as amended by the Bankruptcy Reform Act of 1978, P.L. 95–598 (1978)]. In addition, the Kontoratoses and attorney Richard Poulos, counsel for CBL, each appealed an order of the bankruptcy court dated October 22, 1981 denying motions requesting the bankruptcy judge to disqualify himself under 28 U.S.C. § 455. The principal grounds alleged in the recusal motions arose out of the September 16 hearing, various statements made by the bankruptcy judge at that hearing, and out of certain actions taken by the bankruptcy court as a result of that hearing. Because of the bankruptcy judge's refusal to conduct further hearings without a resolution of the appeal, and in an attempt to resolve the issues on appeal as quickly as possible, we affirmed both orders of the bankruptcy judge on January 7, 1982 without an opinion, but reserved the right to file a memorandum in support of that decision. This opinion embraces our reasoning on these appeals.

The debtor, CBL, filed its original petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 1101, et seq.) on June 12, 1980. The case was originally assigned to Bankruptcy Judge Conrad Cyr, who presided over the case until the spring of 1981 when he was appointed to the United States district court, whereupon Bankruptcy Judge Frederick Johnson assumed responsibility for the proceedings. On August 29, 1981, Judge Johnson disqualified himself from the case *sua sponte* after an account of an annual golfing trip with Poulos and others was published in the local newspapers. Thereafter, Chief Judge Coffin of the First Circuit designated Bankruptcy Judge Harold Lavien of the District of Massachusetts to preside over the Chapter 11 proceeding. Immediately thereafter, a motion was filed by the Casco Bay Island Transit District ("CBITD"), a quasi-public authority created by act of the Maine legislature, seeking disqualification of attorney Poulos as counsel for the debtor as well as the appointment of a trustee. The City of

Portland and the Maine Public Utilities Commission joined in the motion which was set down for hearing on September 16, 1981.[1] All of this occurred only eight days after Judge Lavien's designation to a proceeding which had engendered more than 14 months of hearings, adversary proceedings and judicial decisions to the point that confirmation of either of two proposed plans of reorganization was imminent.

After reviewing that portion of the record which had been forwarded by the clerk of the Bankruptcy Court for the District of Maine, Judge Lavien convened the September 16 hearing, made certain prefatory remarks, limited the presentation of counsel to the legal arguments on the question of whether or not the appointment of a trustee was warranted under the circumstances and then, after a five minute recess, issued a bench order authorizing the appointment of a trustee. That order had apparently either been outlined or prepared in advance of the hearing. Motions for reconsideration of that order were filed by CBL and the Kontoratoses, and they were summarily denied. Motions for disqualification under 28 U.S.C. § 455 were then filed by attorney Poulos and by the Kontoratoses, and these were also denied summarily by Judge Lavien. It is Judge Lavien's decision not to recuse himself, as well as his decision to authorize the appointment of a trustee, which are the subject of these appeals.

CBL is a steamship line which, among other things, provides commuter service between the city of Portland, Maine and various islands in that city's harbor. In some instances, it is the sole form of ready transit between certain islands and the mainland. As such, CBL is regulated by public authority and is of interest to the local citizenry which it serves. However, CBL is a privately-owned corporation, its principal stockholders, directors and officers being Valerie and Peter Kontoratos. They are involved in their own individual Chapter 11

proceedings before the bankruptcy court in Maine and Judge Lavien has also been designated to preside over these proceedings. CBL's plight as a Chapter 11 debtor is apparently connected to the financial difficulties of its principals. Counsel for CBL stated at the September 16 hearing that the principal reason for CBL's Chapter 11 proceeding was to protect the assets of the company from attachment by creditors of the Kontoratoses. Moreover, counsel indicated as well that the Kontoratoses had admitted the appropriation and wrongful use of corporate assets for their individual benefit.

Judge Cyr, who was the presiding bankruptcy judge at the time, by order dated October 23, 1980 barred the Kontoratoses from any participation in or control of the management of the then debtor in possession CBL. He further ordered that one Peter McLoughlin, a former owner of the line, be hired as the operating officer of the debtor, with both he and Mr. Poulos, as counsel for the debtor, having joint authority for the signing of all checks. Approximately one month after being hired, Mr. McLoughlin died leaving the control and operation of the debtor's business ostensibly in the hands of attorney Poulos.

At the September 16, 1981 hearing, Judge Lavien made certain prefatory remarks concerning his review of the court record in the case, his understanding of the financial condition of the debtor in possession, the apparent status of all creditors and equity holders and the apparent purpose behind the filing of the Chapter 11 petition. He then proceeded to hear the arguments of counsel on the limited issue of whether or not to authorize the appointment of a trustee. After hearing from all counsel who wished to be heard, and after repeatedly refusing to admit or hear evidence as to various disputed matters, the court recessed for five minutes before reading into the

---

1. The United States trustee had a long-standing Request for Order Authorizing the Appointment of a Trustee, filed December 29, 1980, which had never been acted upon. Further, at the September 16 hearing, the United States trustee renewed his request. This fact moots any discussion of whether the request for the appointment of a trustee was properly before the court.

record from some form of notes a lengthy order authorizing the appointment of a trustee.

## I. THE ORDER DIRECTING THE APPOINTMENT OF A TRUSTEE

The substance of the appellants' contention is that the court's hearing on the appointment of a trustee was improper in that the judge refused to accept evidence as to material disputed facts and, instead, relied upon unproved allegations in the court's record of the Chapter 11 proceeding. Moreover, they contend that the order was improvident in view of the fact that hearings on confirmation of two plans of reorganization were imminent. For the reasons which appear below, we find the appellants' contentions to be without merit.

Section 1104[2] of the Bankruptcy Code sets forth the grounds for the appointment of a trustee in a Chapter 11 case. It provides that a trustee may be appointed at any time after the commencement of the case and before confirmation of a plan. Additionally, the appointment can be made only after appropriate notice and a hearing. The phrase "after notice and hearing" is defined in § 102 of the Code as meaning after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances. 11 U.S.C. § 102(1).[3]

■ Appellants make no credible argument that the notice of the hearing on September 16 was in any way deficient.

They argue that the court was somehow deficient in its notice in that it failed to identify properly the "scope" of the hearing or the issues to be presented. We dismiss this contention by saying that the bankruptcy court, by limiting the "scope" of the hearing before it to argument by counsel, did not deny the parties the opportunity to be heard. Appellants' second argument has more substance. Appellants' argue that the bankruptcy court's failure to allow them a full evidentiary hearing was reversible error since the appointment of trustee requires a showing of cause "in the nature of fraud, dishonesty, incompetence or gross mismanagement."[4]

Appellants focus on these "causes" and argue that they require a full evidentiary hearing before the judge. The merits of that argument are irrelevant because in this instance, the judge relied on alternative facts for his finding that cause existed.

■ The bankruptcy court's order directing that a trustee be appointed had as its basis an analysis of existing, undisputed facts in the case which were a matter of record, and the Court concluded that there was no choice but to authorize the appointment of a trustee. These facts were: (1) The principal officers had been barred from any participation in the management of the debtor; (2) new "management" had been installed by the court; and (3) no trustee had as yet been appointed. The court noted these facts when it discussed the effect of Judge Cyr's October 23, 1980 "operating order":

**2.** 11 U.S.C. § 1104(a)(1) reads:
At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—
(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

**3.** This definition is a recognition of the many types of problems faced by a bankruptcy court, the requirements of urgency in many financial

matters, and the need for flexibility in the scheduling of hearings.

**4.** This subtle word-play by the appellants in substituting "in the nature of" for the language of § 1104 which uses "including" is an example of their misunderstanding of this case and the bankruptcy court's decision. (Brief of Appellants at p. 24.) The Code "includes" some examples of "cause", but does not restrict the term to those examples.

It is clear from the court's decision that it made no findings as to any fraud, dishonesty, incompetence or gross mismanagement, but instead, relied on different grounds for finding that "cause" existed.

... [T]he Court assumed control, and by order of October 23rd, 1980, placed Poulos and McLoughlin, the former owner in charge, jointly signing checks. And since Kontoratoses were removed from any management, I'm at a loss from this point on to understand Poulos' status as anything other than a de facto trustee.

McLoughlin, whatever his status, died within a month and a new order of November 28th, 1980 did name Mr. Zimmerman counsel for the Creditors Committee, along with Poulos, [to replace McLoughlin] but with less authority than even McLoughlin had since, for example, now Poulos alone signed checks.

Based on this state of affairs and relying on the fact of Poulos' unique position in the case, the bankruptcy judge discussed the need for the impartiality "of the courts' agents",[5] and the fact that almost every party in interest had sought to remove Poulos as counsel for the debtor. However, the question of whether Poulos is a disinterested party is superfluous in view of what we conclude was the judge's real reason for authorizing the appointment of a trustee:

In a Chapter 11, there is either a debtor in possession or a Trustee. Here there obviously is no debtor in possession since its "owners and officers" ... having previously been removed for misconduct, and there can be no question from the court's [Oct. 23] order that they were ordered not in any way to have anything further to do with management of the company, that is the usual grounds for appointment of a Trustee, both under law and simple logic.

\* \* \* \* \* \*

Poulos has no recognizable client. He has been functioning as a de facto trustee, acting as his own counsel, and he cannot qualify in either capacity.

It appears from the record in this case that the facts relied upon by the bankruptcy court were amply supported. Moreover, neither of the appellants have challenged any of the facts which form the basis of the court's decision, nor do they challenge those facts in this appeal. Rather, they argue that additional fact findings are necessary before a trustee may be appointed. However, we found that the bankruptcy judge's decision to authorize the appointment of a trustee is both legally sound and factually supported by the entire record.

As the bankruptcy judge correctly pointed out, a Chapter 11 reorganization contemplates only two possible scenarios for control of the debtor's business operations: a debtor *in possession*, or a debtor *out of possession*. The latter situation contemplates and mandates the appointment of a trustee. However, where no trustee is appointed, the debtor is deemed to be in full control of its business and has all the powers and duties of a trustee. 11 U.S.C. § 1107(a).[6] Indeed, a debtor in possession is defined simply as "the debtor". 11 U.S.C. § 1101(1). No change in management or control of the debtor's financial affairs is contemplated by the creation of a "debtor in possession". The term simply refers to a debtor in control of its assets and its business fortune, subject to court approval in certain instances. Nevertheless, either the debtor must be in control, or the court will authorize the appointment of a trustee to take control of the debtor's affairs. Furthermore, the phrase "in possession" not only means physical possession, but actual control over decisions regarding conduct of the business. In sum, the debtor, to be in possession, must have some form of control over its business destiny and be able to make the day to day business decisions required of its operation.

---

5. In fact, the trustee is not an agent of the court. The trustee is appointed, supervised and his or her performance monitored by the U.S. trustee for pilot districts. 11 U.S.C. § 151104; see also Chapter 39 of Title 28 of the United States Code, added by § 224(a) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598 (1978).

6. In this sense, a debtor in possession is always a de facto trustee. As such, the bankruptcy court's comments about attorney Poulos' qualifications as a de facto trustee are unnecessary, for the court did not disqualify Poulos from operating the debtor's business, but rather, found independent grounds for the appointment of a trustee.

When a trustee is appointed, that control, or possession, is transferred to the trustee who assumes the decision-making function previously held by the debtor's management. Moreover, the appointment of a trustee is the only statutorily authorized alternative to a debtor in possession. The Bankruptcy Court is specifically prohibited from appointing a receiver. 11 U.S.C. § 105(b).

With that legal analysis in mind, the judge correctly saw in the situation before him on September 16, 1981 an unlawful or unauthorized reorganization form. He called it Maine's "great experiment". The facts which he relied upon were as follows:

1. The debtor's principal officers and directors were barred by court order from participating in any way with the management of the debtor's business.

2. The debtor was being operated by a person or persons installed as manager(s) *by the court.*

3. There had been no authorization for the appointment of a trustee.

These three facts, plainly of record at the time of the hearing, led the bankruptcy judge to conclude that a trustee was required under the circumstances.

We concur with that conclusion upon the same grounds cited by the bankruptcy judge. On October 23, 1980, the bankruptcy court had effectively dispossessed the debtor of control over its business by barring the Kontoratoses from participation in the management of the company. Because a corporation is an inanimate legal entity, it acts only through its officers and agents. In this case, the court removed those agents from control and in effect replaced them with "new management". The court had no authority under the Bankruptcy Code to do so. Once it removed the debtor's agents from control, it had no alternative but to authorize those agents to be replaced with a trustee. The judge did no more than correct the error of that decision by doing what should have been done on October 23, 1980.

Thus, it is clear that appellants' protestations about the lack of an evidentiary hearing are misplaced, for none was needed in view of the undisputed facts which the bankruptcy judge relied upon. Moreover, the judge did not act, as appellants contend, in any "appellate" fashion in authorizing the appointment of a trustee. Rather, his action was no more than the reconsideration by a bankruptcy judge of an earlier decision not to appoint a trustee. The fact that two different bankruptcy judges were involved does not make the latter's decision "appellate" in nature. Moreover, the judge did not disturb Judge Cyr's finding of cause for the removal of the Kontoratoses, from which there was no appeal. Instead, he relied on that finding and other circumstances which existed at the time of the September 16th hearing to conclude that a trustee was legally required.

Finally, appellants make much of the judge's comments regarding the possible conflict of interest of attorney Poulos and the lack of a specific fact-finding in that regard. Since we find those comments to have been superfluous and not central to the decision, we dismiss appellants' contentions on that issue.

## II. THE ORDER DENYING THE MOTIONS FOR RECUSAL

By this appeal, appellants contend that the trial judge, through his conduct and statements at the September 16, 1981 hearing, evidenced bias or prejudice against the appellants, and through such conduct and statements gave cause to conclude that his impartiality might reasonably be questioned. 28 U.S.C. § 455(a) and (b)(1). They appeal from an order denying their recusal motions. Section 455, upon which appellants rely, provides in appropriate part:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has personal bias or prejudice concerning a party, or personal

knowledge of disputed evidentiary facts concerning the proceeding.

The standard which governs a motion for recusal of a judge under § 455(a) is whether the charge of lack of impartiality is grounded on facts that would create reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion, but rather in the mind of the reasonable man. *United States v. Martorano*, 620 F.2d 912, 919 (1st Cir. 1980); *United States v. Cowden*, 545 F.2d 257 (1st Cir. 1976), cert. den. 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977).

 That "reasonable man-reasonable factual basis" test is not applicable to § 455(b)(1), which requires a showing of *personal* bias or prejudice or *personal* knowledge of disputed facts, which has been obtained extra-judicially. *Davis v. Board of Commissioners of Mobile County*, 517 F.2d 1044, rehearing den. 521 F.2d 814 (5th Cir. 1975); *United States v. Thompson*, 483 F.2d 527 (3rd Cir. 1973). Appellate review of a judge's denial of a motion for recusal is limited to whether the trial judge abused his discretion in failing to disqualify himself. *United States v. Parrilla Bonilla*, 626 F.2d 177, 179 (1st Cir. 1980); *Blizard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir. 1979).

Appellants collectively list numerous separate grounds for their motion seeking recusal, and those grounds are best addressed by listing them here:

1. The decision to authorize the appointment of a trustee was not based upon specific findings of fact, but rather on a pre-determination based upon his review of an incomplete record.

2. The hearing of September 16, 1981 was limited to the arguments of counsel.

3. The trial judge's order improperly suggested a type of individual which the U.S. trustee should appoint as trustee, and improperly suggested what he should investigate.

4. The order of September 16, 1981 effectively set aside Judge Cyr's order of October 23, 1980.

5. The findings made at the September 16, 1981 hearing were prepared in advance of the hearing.

6. The order of September 16, 1981 made findings of fact and conclusions of law on matters unsupported by the record, namely

 a. That, the debtor's stockholders were unimpaired.

 b. That, the debtor's Chapter 11 petition was not filed in good faith.

 c. That, the Kontoratoses were the cause of the debtor's financial problems.

 d. That, the "public" was the only real party in interest in the Chapter 11 proceedings.

7. The trial judge evidenced a willingness to favor the "public interest" over that of the Kontoratoses.

8. The trial judge had pre-determined the nondischargeability of the debtor's claim against the Kontoratoses.

9. Taken on balance, the judge's remarks at the hearing of September 16, 1981 caused the appearance of partiality.

10. The trial judge had an improper ex parte conference with the newly appointed Chapter 11 trustee and his counsel without prior notice to interested parties.

Without discussing each charge in detail, we feel that the charges numbered 1 through 4 may be dismissed summarily as bearing not upon the question of recusal, but solely upon the sufficiency of the trial judge's ruling of September 16, 1981, which has already been discussed.

 Charge number 5 appears to have no legal basis. We know of no rule of law which prohibits a trial judge from utilizing his own form of order prepared in advance of a hearing, particularly in this case where the judge knew that the facts underlying his legal conclusion were not subject to dispute and where counsel had the opportunity to argue their respective positions on the matter. We know of no decision which

**954**

states that a judge is prohibited from forming preliminary legal conclusions based upon facts already in the record which appear to be undisputed. That the trial judge may have prepared his order in advance of the hearing is not, of itself, indicative of personal bias or prejudice, nor does it singularly create the appearance of impartiality. That conclusion is buttressed by our review of the record of the hearing which indicates that the trial judge explored all the relevant issues with counsel, and provided ample opportunity for argument. Finally, based upon the facts which existed at the time of that hearing, it seems clear that court authorization for the appointment of a trustee was almost mandatory, given the posture of the case and the lack of alternatives available to the judge. The fact that appellants were given the opportunity to argue against what appeared to be a mandatory order speaks well for the judge's impartiality, under all the circumstances.

Lastly, we find that charges 6 through 8 are nowhere supported by the record. These charges are merely conclusionary allegations, unsupported by any clear statement in the record.

■ Thus, the only remaining charges which truly bear upon the recusal issue are numbers 9 and 10: the judge's remarks at trial and his ex parte conference with the trustee. We conclude, after review of the entire record of the hearing, that the judge's decision to deny recusal was not such an abuse of discretion as to warrant reversal. An examination of the actual comments made is enlightening:

THE COURT: Counsel, when you address the Court, to be sure that our record will reflect all the varied personnel, be sure to identify yourself and who it is you are here representing.

After spending several hours, evenings, and Saturday, reading the pleadings, the orders, the disclosure statements, the objections thereto and the various other material that I received from the Clerk of the Court in Maine, I cannot avoid the gnawing question how could what on paper should have been the simplest cases

imaginable have consumed so much time and effort. I find a docket probably larger than any I have seen in some of the multi-million dollar complicated cases that I have seen, and files that we have received that fill a box 12 by 15 which I understand is only a portion of those pleadings cluttering the Clerk's office.

Counsel, you all must be aware, as I am, that liabilities in this case only amount to $132,000, of which probably not more than $10,000 are secured. And yet page 11 of Mr. Poulos's disclosure statement, lists some $269,805.38 of contemplated fees. The case is not yet closed, and projected fees are already claimed at twice the total debt. All at a time when assets are at least $700,000, and may be as much as $1,400,000 plus potential recoveries in 6 figures.

There would appear to be no impaired class in this matter since the secured and unsecured will be paid in full under any set of facts. The equity holders are also unimpaired in the statutory meaning, since none of their rights to their stock is in any way affected again in this 11.

I can't help wondering if this Chapter 11 was filed in the first place in good faith, and if the Chapter 11's purpose was not to solve any of the debtor's problems, but to solve the stockholders personal problems. If there are any problems of this debtor, they would appear to have been created by the same stockholders. In fact, it would appear that the only real parties in interest in this matter might be the public.

Since everyone here has filed extensive position papers on the motion to appoint a Trustee, I will listen to anyone who represents any interest in the case, but I would hope that you would restrict your remarks to not more than five minutes, and I will listen to Attorney Poulos last, for I hope a motion of not more than 10 minutes. There will be no rebuttals insofar as I may have questions. Counsel? Transcript pp. 3–5

The only other remarks which might be pertinent to this appeal were as follows:

THE COURT: [Counsel for the Kontoratoses] had the affrontery to suggest to the Court that there was a price for confirmation, that his clients were willing to waive discharge and admit their liability, but only if I approved the plan.

MR. ZUCKERMAN: I don't know what was transpiring amongst various counsel to obtain any release of dischargeability from anyone in this case. I didn't understand that that was the suggestion that Mr. Kornreich was making, however. I think he was addressing a point.

THE COURT: I'll give him an opportunity to tell me that they are flatly waiving discharge and admitting their liability regardless of whether the plan is confirmed or not. Transcript at p. 32.

These last remarks can be summarized simply by saying that the trial judge stated his intention to allow the issue of the Kontoratoses' right to a discharge to be determined without any preconditions to that right. In other words, the court would not accept conditions for the waiver of a discharge by the Kontoratoses in their own Chapter 11 case. This simple statement of the law in no way indicates bias, prejudice or impartiality toward the Kontoratoses.

■ The previous remarks, however, must be examined in light of their context and the existing law. A judge's comments during the trial or hearing of a matter before him are disqualifying only if they connote a fixed opinion—"a closed mind on the merits of the case". *United States v. Haldeman*, 559 F.2d 31, 136, (Ct.App.D.C. 1976), cert. den. 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1976), reh. den. 433 U.S. 916, 97 S.Ct. 2992, 53 L.Ed.2d 1103 (1977).

[A]n utterance summons disqualification to avoid either the fact or the appearance of partiality only when it gives fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment. *Ibid.* See also *Berger v. United States*, 255 U.S. 22, 33–34, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1931). Moreover, the expression of judicial opinion is not ordinarily an indicator of bias or prejudice requiring recusal under § 455. *United States v. Parrilla Bonilla*, supra, 626 F.2d at 181. This principle is a restatement of the rule in *Davis v. Board of School Commissioners*, supra, which held that a reviewing court should determine disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality as to a party, and should make its determination on the basis of conduct "extra-judicial in nature as distinguished from conduct within a judicial context". *Davis*, supra, 517 F.2d at 1052.

In the case before us, the trial judge was newly designated in a proceeding that had been hotly contested and litigated during fourteen months of hearings before two prior judges. The record in the case was substantial and required extensive study on his part. The hearing of September 16, 1981 was the first such hearing after his designation to the case. It seems obvious that, by way of prefatory remarks, the judge wished to inform all counsel present of his then-existing view of the proceeding before him, to point up what he saw as particular difficulties in the case, and to designate certain matters as being of particular concern to him. This attempt to enlighten counsel was a gratuity which, had the judge been assigned the case from its inception, counsel might not have needed since over the course of the proceeding they would have obtained a sense of the judge's feelings about the case. Moreover, the remarks, when examined in this context, do not bespeak of "a bent of mind that may prevent or impede impartiality of judgment", nor do they connote a fixed opinion on any subject. Finally, we do not deem it appropriate to disqualify a judge for forming preliminary opinions based on information acquired by him in his official judicial capacity. *United States v. Long*, 88 F.R.D. 701 (W.D.Pa.1981). A judge's views on legal issues may not serve as the basis of a motion to disqualify under 28 U.S.C. § 455. *United States v. Conforte*, 624 F.2d 869 (9th Cir. 1980). Therefore, we conclude that taken on the whole, the trial judge's remarks during the hearing of September 16,

1981 were not such as to permit his impartiality to be *reasonably* questioned.

 Finally, while nothing in the Bankruptcy Code specifically prohibits ex parte communications between a bankruptcy judge and a Chapter 11 trustee, Local Interim Bankruptcy Rule 5001 discourages such meetings. However, ex parte contacts between a bankruptcy judge and a Chapter 11 trustee do not require a judge to disqualify himself where such contacts involved questions on administrative aspects of cases or an exchange of pleasantries, and did not involve disputed issues or trial strategy. *In re Parr Meadows Racing Association, Inc.*, 5 B.R. 564 (Bkrtcy.E.D.N.Y.1980). In this case, the judge met with the trustee with a court reporter present. The appellants have nowhere alleged that the subject of that discussion was in any way prejudicial to their rights. In fact, the appellants did not see fit to identify in their briefs the subject of the discussion despite the existence of a stenographic record of that discussion. We cannot say that the ex parte meeting between the bankruptcy judge and the newly-appointed Chapter 11 trustee warrants disqualification in light of the facts before us and particularly in view of the complicated nature of the administrative aspects of the Chapter 11 proceeding which each had to deal with.

## CONCLUSION

It appearing that the bankruptcy court's decision to authorize the appointment of a trustee was warranted under the circumstances and was amply supported by the record, we would affirm the judgment below.

It further appearing that there was no abuse of discretion by the bankruptcy judge in denying appellants' motions for disqualification, we would affirm those judgments as well.

The Clerk is instructed to append this opinion to the Panels' Order of January 7, 1982.