**In re D.C. SULLIVAN CO., INC., Debtor.**

**Daniel F. FEATHERSTON, Jr., Plaintiff, Appellant,**

v.

**Benjamin GOLDMAN, Esquire and Goldman & Goldman, Defendants, Appellees.**

**No. 87–1897.**

United States Court of Appeals, First Circuit.

Heard March 9, 1988.

Decided April 4, 1988.

Daniel F. Featherston, Jr., Boston, Mass., pro se.

Leonard M. Salter with whom Arthur V. Brown and Wasserman & Salter, Boston, Mass., were on brief, for defendants, appellees.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

SELYA, Circuit Judge.

It is perhaps not without significance that this appeal was argued in March, for the protagonists came to the underlying

---

bankruptcy proceeding as lions of the bar, performed befittingly for most of their time in service, and together masterminded a victory worthy of the king of any jungle. Yet having waged the debtor's battle in so leonine a fashion, counsel then began growling at each other. In this, the final combat of a long war of a case, they depart the litigation in a far less heroic fashion. We find the appeal to involve—on both sides—much roar and little meat. The tale follows.

## I

In 1970, creditors filed an involuntary bankruptcy petition against D.C. Sullivan & Co., Inc. The Bankruptcy Court for the District of Massachusetts appointed a receiver on May 22, 1970 and a trustee soon thereafter. In mid-summer, the bankruptcy judge designated the law firm of Goldman & Goldman as the trustee's special counsel with respect to what we shall call the Watts matter.[1] Benjamin Goldman—a dean of the bankruptcy bar—took up the cudgels.[2]

In the fall of 1975, with trial imminent (or so it was thought), Goldman learned that he would be summoned as a material trial witness. After consultation with the trustee, he sought out Daniel F. Featherston, Jr., appellant. Featherston, an experienced and well-regarded litigator, became Goldman's co-special counsel. The order of appointment specified that the employment of two special counsel vis-a-vis the Watts matter would not be allowed to increase the total fees payable by the estate.[3]

Unbeknownst to the bankruptcy judge or the trustee, Featherston and Goldman had exchanged correspondence in September 1975 wherein they agreed to pool their fees and divide them equally. During the winter of 1981–82, however, Featherston renounced this fee-splitting arrangement. (Inasmuch as the propriety of the repudiation is not presently at issue, we assume—without deciding—that he was within his rights in abrogating the pact.)

To make a lengthy litany tolerably terse, we recount that, after many years of diligent effort, Featherston and Goldman steered the Watts matter to a highly successful close. Almost one million dollars accreted to the estate, enabling the creditors to be paid in full. But all was not peaches and cream. When the bankruptcy judge began hearing fee applications, Goldman opposed *any* award to Featherston on the ground that appellant had been guilty of a material misrepresentation by attempting to conceal the 1975 fee-sharing agreement from the bankruptcy judge. Appellee fought tooth and nail for over a year to prove his point. Though ultimately unsuccessful in scotching Featherston's bid for compensation, Goldman forced the litigator to defend his entitlement in a myriad of proceedings before both the bankruptcy court and the district court. As a result, payment of a substantial portion of appellant's fee was delayed for an appreciable period of time. Eventually, however, Featherston was remunerated in full.[4]

Although paid for his fruitful labors in the Watts vineyard, the grapes of appellant's wrath were swelled to bursting. He filed a motion invoking Bankruptcy Rule

---

**1.** The Watts matter involved assertions that the debtor had been victimized by fraudulent conveyances. We need not delve into the intricacies of the claim today, but simply refer the reader who may thirst for detail to our earlier opinion in *Robinson v. Watts Detective Agency*, 685 F.2d 729 (1st Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 723, 74 L.Ed.2d 953 (1983).

**2.** Although both Goldman & Goldman and Benjamin Goldman, individually, appear as appellees herein, their interests are identical. We shall, therefore, treat with the matter as if Goldman himself were the sole appellee.

**3.** The trustee neglected to seek contemporaneous permission for Featherston's appointment, but the situation was remedied in 1982 when the bankruptcy judge approved Featherston's retention retroactive to September 16, 1975, *nunc pro tunc*.

**4.** We do not imply that appellant received as much as he believed he was worth. The bankruptcy judge pared the application, but for reasons unrelated to Goldman's attempted blockade. Featherston has not contended in this proceeding that appellee's opposition led to any unwarranted reduction of the award.

9011,[5] asking that Goldman be ordered to pay him, as a sanction, reasonable fees for the time spent in consequence of appellee's "filing of frivolous and unwarranted motions to stay and appeals" with respect to Featherston's compensation. Appellant sought upwards of $35,000 in time equivalents, alleging that Goldman "knew or should have known that such pleadings and procedures were, factually and legally, unwarranted and frivolous, and were filed only for purposes of delay and harassment."

The bankruptcy judge held a hearing, took the matter under advisement, and later denied the motion. The judge expressly found that appellee's conduct was not "frivolous or done to harass or cause delay." *In re D.C. Sullivan & Co.*, No. 70–614–G (Bankr.D.Mass. Feb. 27, 1986). Featherston appealed to the district court, which affirmed. *In re D.C. Sullivan & Co. (Featherston v. Goldman)*, Civ. No. 86–1359–K (D.Mass. July 23, 1987). In the district court's view, given the "distinctive circumstances" of the litigation, "there were uncertainties about both the factual details and the legal consequences that left room for some difference of belief about them, formed after reasonable inquiry." *Id.*, slip op. at 6.

The struggle between the erstwhile allies did not, however, end there. Featherston appealed the district court's order and Goldman, not to be outdone, requested that we assess attorneys' fees and double costs against Featherston, *see* 28 U.S.C. § 1927; Fed.R.App.P. 38, because his appeals (to the district court and then to us) "were

frivolous and filed merely for the purpose of harassing" appellee.

## II

This case poses a thorny question as to the timeliness of Featherston's appeal from the bankruptcy court to the district court, a matter briefed and argued *in extenso* by the parties. We can, however, detour around the problem. *See Secretary of the Navy v. Avrech*, 418 U.S. 676, 677–78, 94 S.Ct. 3039, 3039–40, 41 L.Ed.2d 1033 (1974) (per curiam) (where decision on the merits "foreordained" and renders "difficult jurisdictional issue" moot, latter need not be decided); *In re Pioneer Ford Sales*, 729 F.2d 27, 31 (1st Cir.1984) (similar). Following this paradigm, we assume *arguendo* that the first appeal was seasonable, that the district court had jurisdiction over it, and that we likewise acquired jurisdiction when Featherston appealed from the district court.

In this posture of the record, then, we turn to the merits.

## III

Bankruptcy Rule 9011, like Fed.R.Civ.P. 11, emphasizes responsible behavior on the part of litigators. Inasmuch as the two are couched in the same terms and have a common etiology, we believe that Rule 11 jurisprudence is largely transferable to Rule 9011 cases, and we approach the matter from that perspective.[6] Such rules require an attorney to conduct himself in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system. Subjective

---

**5.** Bankruptcy Rule 9011 is a counterpart of Fed. R.Civ.P. 11. It provides in relevant part:

> Every petition, pleading, motion and other paper served or filed in a case ... shall be signed.... The signature of an attorney ... constitutes a certificate by him that ... to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule,

the court on motion or on its own initiative, shall impose on the person who signed it, ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

**6.** Because we uphold the lower courts' findings that no violations of the rules occurred, we need not reach (and take no view of) the nettlesome questions which surround the interplay between Civil Rule 11 and Bankruptcy Rule 9011. *See, e.g., In re Akros Installations, Inc.*, 834 F.2d 1526, 1531 (9th Cir.1987).

good faith is not the issue; generally, Rule 9011 demands that counsel's actions comport with an objective standard of lawyerly performance. *See Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604–05, (1st Cir.1988); *Thomas v. Capital Security Services*, 836 F.2d 866, 873 (5th Cir.1988) (en banc); *INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391, 401 (6th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985). Once it is ascertained that Rule 9011 was transgressed, the bankruptcy court must select and impose an appropriate sanction. But short of that point, the trier has broad discretion in deciding whether counsel acted responsibly under the circumstances. Such decisions are reviewable only for abuse of discretion. *See Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1021–22 (1st Cir.1988); *Muthig*, at 603; *EBI, Inc. v. Gator Industries*, 807 F.2d 1, 6 (1st Cir. 1986).

■ We find no evidence whatever that this discretion was misused in the case at bar. Goldman's opposition to Featherston's fee application centered on the attorney's failure initially to disclose the fee-sharing arrangement to the bankruptcy court. Goldman relied principally upon *In re Futuronics Corp.*, 655 F.2d 463, 468–71 (2d Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982), and *In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925, 931–42 (2d Cir.1979). Both of these opinions discussed the fiduciary obligation owed to the court by counsel in a bankruptcy proceeding and both held the same to have been ruptured by a failure to inform the court of fee-related agreements. We have read the record in this case in the light of *Futuronics* and *Arlan's*, and we cannot say that appellee's position was so groundless as to violate Rule 9011 as a matter of law. In this regard, we are mindful that the bankruptcy judge who exonerated appellee on this charge had appointed the two special counsel and had presided over the insolvency proceedings for thirteen long years. We assign some weight as well to the fact that Featherston

—not Goldman—first cited and raised the spectre of the Second Circuit decisions (in explaining his election to repudiate the fee agreement). *See* Record Appendix 431 (Featherston letter to Goldman, Dec. 28, 1981), 436 (Featherston letter to Goldman, Feb. 19, 1982). Since appellant was the original proponent of the proposition that this caselaw had pertinency to the interrelationships between the lawyers and the bankruptcy court, he was in an uncommonly poor position to protest appellee's subsequent espousal of much the same viewpoint. What is sauce for the goose is sauce for the gander.

Appellant proffers two additional arguments. He says that the courts below applied an incorrect test and that they decided his motion in too summary a fashion. As to the former asseveration, we reject it out of hand. There is not the slightest basis in the record to suggest that either the bankruptcy court or the district court failed to apprehend the appropriate Rule 9011 standard. And, we spy no convincing sign that either tribunal failed to adhere to that benchmark.

■ Appellant's second contention reduces to the claim that, because each filing must be measured separately against the prohibitions contained in Rule 9011, a near endless series of detailed findings must be crafted and entered by the trial judge. We disagree. Although the rule "applies to each and every paper signed during the course of the proceedings and requires that each filing reflect a reasonable inquiry," *Thomas*, 836 F.2d at 875 (footnote omitted), that does not mean that the judge is under an obligation to make specific, detailed findings as to the reasonableness of each and every pleading. To be sure, Rule 9011, like Civil Rule 11, should be used forthrightly in appropriate cases to deter baseless filings. *Fudge*, at 1021–22. But we must not lose sight of the fact that the rule was intended as a tool to hold lawyers in check and to assist judges in overseeing the proper functioning of the judicial process. This tool, and the sanctions which can be imposed under its authority, are an adjunct to the business of litigation, not the

main event. We will not invite full-blown satellite litigation over such issues, nor will we require trial courts to conjure up a welter of paperwork every time a sanctions motion is filed. We deem the record in this case sufficient to permit appellate review under the abuse-of-discretion standard. No more was needed.

## IV

In sum, the docket reveals a situation where two eminent lawyers—perhaps at the expense of good judgment—waged a protracted (and essentially futile) war over who should receive the lion's share of the fees to be awarded. Goldman's opposition to Featherston's application was prolonged and harsh in its phrasing; the argument could certainly be made that, at some point, Goldman should have seen the light and abandoned his protests. But it can also be argued, supportably, that Goldman was simply doing his duty, as he (not unreasonably) saw it. The bankruptcy judge, against the backdrop of years of familiarity with the litigation and the lawyers, took the latter view. The district court discerned no reason to interfere with this exercise of discretion. Nor do we.

By the same token, we readily reject appellee's entreaty that we brand Featherston's appeals as frivolous and assess fees and extra costs against him. If anything emerges clearly from this querulous record, it is that the caterwauling was roughly equal on both sides of the fence.

*Affirmed.* Each party to bear his own costs.