Accordingly, the judgment of the bankruptcy court is **AFFIRMED.**

**In re Richard & Mary Ellen SYLVER**

**Richard & Mary Ellen SYLVER and Robert William Zeida, Plaintiffs/Appellee,**

**v.**

**SECURITY PACIFIC FINANCIAL SERVICES, INC., et al., Defendants/Appellants.**

**BAP No. MB 96–048.**

United States Bankruptcy Appellate Panel of the First Circuit.

Nov. 13, 1997.

tion for actual pecuniary loss, other than a tax penalty—
(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

Paul D. Gallese, with whom Rickel Shuster and Shuster, Rosen & Gallese, Newton, MA, were on brief for Appellants.

Robert William Zeida, East Falmouth, MA, was on brief for Appellee.

Before VOTOLATO, Chief Judge, and GOODMAN and HAINES, Bankruptcy Judges.

PER CURIAM.

Before this Panel for review are two orders from the Bankruptcy Court for the District of Massachusetts—one entered on June 17, 1996, denying the debtors' motion to recuse the bankruptcy judge, and the other entered on September 17, 1996, imposing sanctions in the amount of $8,000 against debtors' counsel, under Fed.R.Bankr.P. 9011. This appeal involves the conduct of debtors' counsel (Zeida) who, in the view of the bankruptcy judge, crossed the bounds of zealous advocacy into the area of sanctionable conduct. For the reasons stated below, we affirm both orders.

## BACKGROUND

On January 25, 1994, Mary Ellen and Richard Sylver filed a Chapter 13 petition to stop the foreclosure of their home, scheduled for February 28, 1994, by Security Pacific Financial Services, Inc. ("Security"), the second mortgagee. On the date of foreclosure, without seeking relief from the automatic stay, Security continued the sale until April 15, 1994. On April 15, still without having moved for relief from stay, Security again continued the sale, until June 16, 1994. The sale was not held that day, but on October 14, 1994, Security filed a motion for relief from stay to foreclose.

On December 1, 1994, the bankruptcy court approved a stipulation between the debtors and Security which provided that the Debtors would cure post-petition arrearages on the second mortgage, pay real estate taxes and other municipal charges, and bring their Chapter 13 plan payments current by December 1, 1994. The Stipulation also provided that in the event of a default, the automatic stay would be lifted upon the filing of an affidavit with the court. On December 6, 1994, Security filed an unchallenged affidavit to that effect and obtained relief from stay.

On January 30, 1995, on the debtors' motion, the Chapter 13 case was dismissed. On February 7, 1995, the debtors sought reconsideration of the dismissal and requested conversion to Chapter 7, instead. On February 13, 1995, the motion to reconsider was granted and the case was converted to Chapter 7.

On February 17, 1995, Security held its scheduled foreclosure sale, notwithstanding Zeida's protestation to Security's attorney that upon conversion to Chapter 7 the automatic stay was reinstated. The property was sold to the high bidder, John Druley, who delivered a $5,000 deposit. On February 23, 1995, Security filed another motion for relief from stay (the "Second Motion"), requesting permission to foreclose and to conduct eviction proceedings. The Second Motion failed to reference the prior stipulation and default

or to say that Security had already foreclosed on the debtors' property a few days earlier.

The debtors objected to the Second Motion, requesting that the foreclosure sale be set aside and that Security and its attorneys be sanctioned for failure to disclose that Security had already foreclosed on the debtors' property. In its order dated March 17, 1995, the bankruptcy court ruled that: (1) Security had already obtained relief from stay in December 1994; (2) the automatic stay was not reinstated upon conversion to Chapter 7; and (3) the conversion did not necessitate the filing of the Second Motion for relief from stay. The court also denied the debtors' requests to invalidate the foreclosure sale and for sanctions, stating in a footnote that:

> The motion is denied on both procedural grounds *and substantive.* An action for declaration that a foreclosure sale is void should take the form of an adversary proceeding. F.R.Bankr.P. 7001(2). Moreover, the action cannot be entertained in the absence of the party to whom the property was sold at foreclosure. *And, in any case, the foreclosure sale was not conducted in violation of the automatic stay.*

Order, March 17, 1995, n. 1, p. 2 (emphasis added).

On May 15, 1995, Zeida filed a six count complaint against Security, its counsel, and John Druley, seeking to undo the foreclosure sale as having been conducted in violation of the automatic stay, and for sanctions. Security counterclaimed, alleging intentional interference with advantageous business relations. On January 17, 1996, the bankruptcy court granted Security's motion for summary judgment as to counts 1 through 4 and dismissed counts 5 and 6 for failure to state a claim upon which relief can be granted. We will consider in some detail the Complaint and the bankruptcy court's rulings, as they form the basis of the sanction order at issue.

In count 1, the debtors contended that the omission in the Second Motion for relief from stay that Security had already foreclosed on the debtors' home constituted an intentional misrepresentation of material fact and a violation of Fed. R. Bankr.P. 9011(a). The debtors requested punitive damages, costs, attorney's fees, and a declaration that the foreclosure sale was void. The bankruptcy court granted summary judgment for the defendant as to this count on the basis of *res judicata*, in that the requested relief was identical to that denied by the Order of March 17, 1995.

Count 2 sought avoidance of the foreclosure sale on the ground that Security failed to provide proper notice. Summary judgment was granted as to this count as well, the court concluding that proper notice was established by the signature of Mr. Sylver on the return receipt card of Security's letter sent via certified mail.

Counts 3 and 4 alleged that Security's rescheduling of the foreclosure sale on two occasions, without first obtaining relief from stay, violated the automatic stay and required an award of actual damages, punitive damages, costs and attorney's fees. The court granted summary judgment, based on *Zeoli v. RIHT Mortgage Corp.*, 148 B.R. 698 (D.N.H.1993), where the court held that continuation of a foreclosure sale is not a violation of the automatic stay. The court also noted that the debtors failed to allege or demonstrate any actual harm as required under 11 U.S.C. § 362(h).[1]

Count 5 sought to void the foreclosure sale and to compel Security to accept the debtors' payment of the second mortgage in full. As grounds, the debtors alleged that the original stipulation settling Security's first motion for relief from stay was entered into without their authorization and that the subsequent motion to dismiss the Chapter 13 case had been filed without their consent, as they had not yet obtained refinancing for Security's mortgage. The court dismissed Count 5 out of hand because the debtors asserted no valid reason to void the sale.

Count 6 sought an order discharging John Druley from his obligation to purchase the

---

1. 11 U.S.C. § 362(h) states:
   An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

property. This count was dismissed on the ground that the debtors lacked standing to request such relief.

The debtors did not seek review of the bankruptcy court's January 17, 1996 order dismissing their claims. On January 26, 1996, the court held a status conference regarding Security's counterclaim, at which time Security withdrew the counterclaim and moved orally for sanctions against Zeida.[2] Extensive colloquy between counsel and the court resulted in Zeida's June 14, 1996 motion to recuse the bankruptcy judge from hearing Security's motion for sanctions, and the denial of that request.

On June 19, 1996, an evidentiary hearing on the sanctions motion was held and on September 17, 1997, the bankruptcy judge ordered sanctions against Zeida in the amount of $8,000 for violation of Fed. R. Bankr.P. 9011. We consider Zeida's appeal from the June 17, 1996 endorsement order denying his motion to recuse and the September 17, 1996 Order imposing sanctions to be timely as the order denying the motion to recuse was interlocutory when entered. *See Lopez v. Behles (In re American Ready Mix, Inc.)*, 14 F.3d 1497, 1499 (10th Cir.) *cert. denied*, 513 U.S. 818, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994).

**2.** At the status conference Security also withdrew its motion for sanctions, without prejudice to filing it in the bankruptcy case. On January 31, 1996, the motion for sanctions was refiled. The record does not disclose, however, whether it was filed in the bankruptcy case, the adversary proceeding, or both.

**3.** Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

## DISCUSSION

We review the Bankruptcy Court's application of the law *de novo*, and will overturn findings of fact only if clearly erroneous. *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir.1993). *LaRoche v. Amoskeag Bank (In re LaRoche)*, 969 F.2d 1299, 1301 (1st Cir.1992).

### A. RECUSAL:

■ Zeida sought disqualification of the bankruptcy judge under Sections 144,[3] and 455(a) and (b)(1)[4] of Title 28.[5] When an affidavit alleging personal bias or prejudice is filed under Section 144, "a trial judge is not required immediately to recuse himself.... Although the trial judge may not pass on the truth of the matters asserted ... the trial judge must pass upon the legal sufficiency of the affidavit." *United States v. Kelley*, 712 F.2d 884, 889 (1st Cir.1983). Because Sections 144 and 455(a) and (b)(1) are similarly worded and govern the same area of conduct, they are construed *pari materia*, and "the test of the legal sufficiency of a motion for disqualification is the same under both statutes." *Id.*

■ The standard to determine whether a judge should be disqualified is:

28 U.S.C. § 144.

**4.** (a) Any justice, judge, or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:
(1) Where he has personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding.
28 U.S.C. § 455.

**5.** There is significant case law that 28 U.S.C. § 144 is inapplicable to bankruptcy judges. *See In re Casco Bay Lines, Inc.*, 25 B.R. 747, 757 (1st Cir. BAP 1982); *In re Celotex Corp.*, 137 B.R. 868, 874 (Bankr.M.D.Fla.1992). Because Zeida moved under Section 455 as well, and because the standard for recusal under both sections is the same (*see* discussion *infra*), we will address all issues raised by the appeal, rather than summarily denying any part of it.

whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man [person].

*United States v. Cowden*, 545 F.2d 257, 265 (1st Cir.1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); *Town of Norfolk v. U.S. Army Corps*, 968 F.2d 1438, 1460 (1st Cir.1992); *United States v. Martorano*, 620 F.2d 912, 919 (1st Cir.), *cert. denied* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980); *United States v. Mirkin*, 649 F.2d 78, 82 (1st Cir.1981); *In re Casco Bay Lines, Inc.*, 17 B.R. 946, 952–53 (1st Cir. BAP 1982); *Kelly v. Giguere (In re Giguere)*, 183 B.R. 27 (Bankr.D.R.I.1995). "In essence section 455(a) allows a judge to disqualify himself if a reasonable [person] would have factual grounds to doubt the impartiality of the court." *Blizard v. Frechette*, 601 F.2d 1217, 1220 (1st Cir.1979).

The Supreme Court has held that the "extrajudicial source doctrine" applies to Section 455. *See Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In summing up its application, the Court stated:

First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* at 555, 114 S.Ct. at 1157 (emphasis added); *See also In re Casco Bay Lines*, 17 B.R. at 953.

■ Review of the bankruptcy court's order denying the motion to recuse "is limited to determining whether the trial court's evaluation of the evidence amounted to an abuse of discretion. *Blizard v. Frechette*, 601 F.2d 1217 (1st Cir.1979)." *Casco Bay Lines*, 25 B.R. at 756; *United States v. Parrilla Bonilla*, 626 F.2d 177, 179 (1st Cir.1980).

In his affidavit in support of recusal, Zeida states:

I believe that the proceedings of January 26, 1996 ... as well as the general demeanor of the judge destroy any possibility of my getting a fair hearing in Judge Kenner's courtroom. She was pointedly hostile towards me, declaring openly that she had already decided, without a hearing, that I was personally liable for sanctions—the only question being the amount. Further, the solicitous manner in which the judge coached Attorney Rickel Shuster, who was plainly confused as to exactly in what manner the nails should be driven through my palms, and the judge's allowance of the Clerk's interrupting the proceedings to suggest a course of action—promptly adopted by the judge—demonstrates an atmosphere inimical to justice.

(Affidavit of Attorney Robert William Zeida, at 5).

■ A review of the entire record, particularly the transcript at pages 10–22, does not disclose any basis to support the argument that the bankruptcy judge abused her discretion in denying the motion to recuse. While the colloquy between counsel and the court may have been adversarial, and while judicial

temperance is, of course, always to be inspirited, the remarks complained of do not approach a level requiring our intervention.

Neither does the bankruptcy judge's stated preliminary opinion that Zeida's conduct was sanctionable constitute grounds for recusal. Her comments were made after a hearing on Security's motion for summary judgment as to the Sylver complaint, and the ruling was not based on any extrajudicial source but was based on events occurring within the confines of the case. *See Liteky,* 510 U.S. at 555, 114 S.Ct. at 1157.

## B. *SANCTIONS:*

■ Federal Rule of Bankruptcy Procedure Rule 9011 states:

> Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Fed. R. Bankr.P. 9011(a). In construing Rule 9011, courts have looked to cases involving Fed.R.Civ.P. 11, which remains substantively similar to Rule 9011, notwithstanding the December 1, 1993 amendments. *In re Braun,* 152 B.R. 466, 471 n. 3 (N.D.Ohio 1993); *In re Remington Dev. Group, Inc.,* 168 B.R. 11, 15 (Bankr.D.R.I.1994). Both rules require attorneys "to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system." *Figueroa–Rodriguez v. Lopez–Rivera,* 878 F.2d 1488, 1491 (1st Cir.1988) (*quoting In re D.C. Sullivan Co.,* 843 F.2d 596, 598 (1st Cir. 1988)), *aff'd in part* on rehearing *en banc,* 878 F.2d 1478 (1989).

■ The "appropriate standard for measuring whether a party and his or her attorney has responsibly initiated and/or litigated a cause of action in compliance with Rule 11 ... is an objective standard of reasonableness under the circumstances." *Cruz v. Savage,* 896 F.2d 626, 631 (1st Cir.1990). Subjective good faith is not enough to protect an attorney from sanctions under Rule 11. *Id.* "A violation of Rule 11 ... might be caused by inexperience, incompetence, willfulness, or deliberate choice." *Id.* Once a violation of Rule 9011 is found, the imposition of sanctions is mandatory, *Business Guides, Inc. v. Chromatic Communications Ent., Inc.,* 498 U.S. 533, 543, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991), and such decisions are reviewable only for abuse of discretion. *Featherston v. Goldman (In re D.C. Sullivan Co., Inc.),* 843 F.2d 596, 599 (1st Cir.1988) (*citing Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1021–22 (1st Cir.1988); *Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600, 603 (1st Cir.1988); *EBI, Inc. v. Gator Indus., Inc.,* 807 F.2d 1, 6 (1st Cir.1986)); *see also In re Coones Ranch, Inc.,* 7 F.3d 740 (8th Cir. 1993) (appellate courts apply abuse-of-discretion standard of review in all aspects of cases under Bankruptcy Rule 9011).

■ Zeida argues that he could not be sanctioned for filing the adversary proceeding because he did so at the invitation of the bankruptcy judge. In support of this argument Zeida quotes, out of context, only a portion of a footnote in the bankruptcy judge's March 17, 1995 Order denying the debtors' unsuccessful motion to invalidate the

foreclosure sale. Read in its entirety the footnote contains no such invitation. The totality of her remarks reveal that the bankruptcy judge denied the debtors' request to invalidate the foreclosure sale on *"both* procedural grounds *and substantive,"* and that *"the foreclosure sale was not conducted in violation of the automatic stay."* Order, March 17, 1995, n. 1, p. 2 (emphasis added). The plain and simple fact is that, after receiving that order (and not appealing it), Zeida filed an adversary proceeding seeking the same relief as had just been denied.

Moreover, as the bankruptcy judge correctly observed, Zeida failed to assert any harm caused by the alleged stay violation. Section 362 allows an "individual *injured* by any wilful violation of a stay" to recover actual damages, costs and attorney's fees. 11 U.S.C. § 362(h) (emphasis added). By failing to allege any injury caused by Security's action, the Complaint was insufficient on its face.[6]

The record amply supports the finding of a Rule 9011 violation by the filing of a complaint not well grounded in law, and that the bankruptcy judge did not abuse her discretion in imposing $8,000 in compensatory sanctions. While it is unclear whether Zeida has actually challenged the amount of the sanctions on appeal, we conclude, based on the record, that the bankruptcy judge acted within her discretion in fixing the amount of the sanction at $8,000.

Accordingly, the June 17, 1996 endorsement order denying Zeida's motion to recuse, and the September 17, 1996 Order imposing sanctions are AFFIRMED.

---

6. Zeida also argues that by filing the adversary proceeding, he was adding support to the argument that Security's postponement of the foreclosure sale on two occasions without first obtaining relief from stay, violated the automatic stay. He cites *Zeoli v. RIHT Mortgage Corp.,* 148 B.R. 698 (D.N.H.1993), wherein the District Court ruled contrary to Zeida's position but stated in its opinion the well worn platitude that "reasonable minds do differ on the subject." *Id.* at 699. Also critical in the fact pattern, but ignored by the appellant, is that on November 7, 1994, the debt-

ors agreed that relief from stay would enter if they defaulted. The stipulation was approved by the bankruptcy court *after* Security's alleged stay violation, and by so stipulating, the debtors in all likelihood waived any arguments as to Security's rescheduling of the foreclosure sale several months earlier. We need not address the point, however, because the court's imposition of sanctions was adequately grounded whether or not the alleged stay violations were waived by the stipulation.