In the Matter of Lee S. FONG, Petitioner,

v.

AMERICAN AIRLINES, INC., and San Francisco Area Board of Adjustment, Respondent.

Lee S. FONG, Plaintiff,

v.

AMERICAN AIRLINES, INC., and Local 505 Transport Workers Union, AFL–CIO, Defendants.

Civ. Nos. 76–2730–WWS, 76–0573–WWS.

United States District Court, N. D. California.

May 2, 1977.

See also D.C., 431 F.Supp. 1340.

Dennis John Woodruff, Linda J. Brown, San Francisco, Cal., for petitioner.

Irwin Leff, Rosenthal & Leff, Inc., George C. Stoll, Asst. U. S. Atty., Donald D. Connors, Jr., Brobeck, Phleger & Harrison, San Francisco, Cal., for respondents.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISQUALIFY

SCHWARZER, District Judge.

Defendant American Airlines has moved to disqualify the undersigned Judge of this Court on the ground that "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The motion is supported by an affidavit which sets forth certain comments of the Court critical of defendant's actions made in the course of a status and settlement conference in these proceedings. Important questions are raised concerning the interpretation and application of Sections 144 and 455 of Title 28 of the United States Code.

### I.

Disqualification of judges is governed by Section 455 which, as amended in 1974, provides in relevant part:

"(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party . . ."

While Section 455 provides a substantive test for disqualification, it does not provide the procedure for its enforcement. Thus, the first question that arises concerns the

procedure for disqualification. Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

■ The mandatory language of this section is susceptible to the interpretation that by filing an affidavit of bias or prejudice, a party may make what amounts to a peremptory challenge, compelling immediate recusal by the judge. Support for such an interpretation may be found in the legislative history of Section 144, adopted originally in 1911.[1]

Judicial decisions implementing Section 144 have, however, given it a different gloss by permitting the challenged judge to pass on the sufficiency of the facts and reasons set forth in the affidavits filed in support of motions to disqualify before acting on such motions. See, e. g., *Beland v. United States*, 117 F.2d 958 (C.A. 5, 1941), *cert. den.*, 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541 (1941); Note, Disqualification of a Federal District Judge for Bias—The Standard of Review Under § 144, 57 Minn.L. Rev. 749, 756–763 (1973) and cases cited. Congress impliedly approved this interpretation by reenacting Section 144 in 1949 in the face of these decisions. Moreover, at the time of the adoption of amended Section 455 in 1974, Senator Birch Bayh proposed but later withdrew an amendment to Section 144 which would have provided, in relevant part,

> "Whenever a party to any proceeding in a district court requests a change of judge, the judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding . . . ."[2]

It seems clear therefore that no peremptory challenge lies under these statutes and that the sufficiency of the affidavit may properly be reviewed by the challenged judge.

■ The second question arising under Section 455 concerns the standard by which the Court is to determine whether the judge's "impartiality might reasonably be questioned." The legislative history of the 1974 amendment leaves no doubt that Congress intended to adopt an objective standard, as opposed to the judge's own opinion of his impartiality or lack thereof.

The House Report states in relevant part: "This general standard is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case . . . . "Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial." H.R. No. 93–1453, P.L. 93–512, 1974 U.S.C.C. A.N., pp. 6351, 6354–6355. (Emphasis in original.)

---

1. The history of Sections 144 and 455, and the course of decisions under them, has been the subject of extensive law review comment. See, e. g., 7 Seton Hall Law Review 612 (1976); 45 Fordham Law Review 139 (1976); 57 Minn.Law Review 749 (1973).

2. See, Hearings on S. 1064 Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 93rd Cong., 1st Sess. 12–13 (1973); Note, *Disqualification of Federal Judges for Bias Under 28 U.S.C. Section 144 and Revised Sec. 455*, 45 Fordham Law Review 139, 147–148 (1976).

Court decisions rendered since the adoption of the 1974 amendment confirm that the charge of lack of impartiality must be "grounded on facts which would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion . . ., but rather in the mind of the reasonable man." *United States v. Cowden*, 545 F.2d 257, 265 (C.A. 1, 1976); see, also, *Parrish v. Board Com'rs of Alabama*, 524 F.2d 98, 103 (C.A. 5, 1975) (en banc), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976): ". . . the language of § 455(a) was intended to displace the subjective 'in the opinion of the judge' test for recusal under the old statute, and the so-called 'duty to sit decisions'. We also noted that § 455(a) was intended to substitute a 'reasonable factual basis—reasonable man test' in determining whether the judge should disqualify himself."

■ Having thus concluded that the statutory framework does not result in automatic disqualification upon the filing of an affidavit and that the standard by which the facts and reasons stated in the affidavit must be judged by an objective reasonable man test, the question remains as to the manner in which an affidavit of prejudice is to be considered by the Court. To begin with, since the decision in *Berger v. United States*, 255 U.S. 22, 36, 41 S.Ct. 230, 234, 65 L.Ed. 481 (1921), it has generally been accepted that Section 144 "withdraws from the presiding judge a decision upon the truth of the matters alleged [in the affidavit]."[3] But, as heretofore pointed out, the judge may pass on the sufficiency of the facts and reasons stated in the affidavit and may do so in the context of other affidavits as well as the record and pleadings on file in the action.[4]

With these controlling principles in mind, the Court now turns to the question before it.

## II.

American's motion for disqualification is based upon comments which the record reveals were made by the undersigned in the course of a Status and Settlement Conference called by the Court on its own motion. By order filed December 3, 1976, the Court scheduled the Conference to be held on December 16, 1976, and directed plaintiff and responsible officials of both defendants to be present. Inasmuch as that Conference provided the context in which the Court's comments were made, it is appropriate to consider the circumstances leading to it.

The complaint in the principal action (No. C–76–0573–WWS), filed in March 1976, alleges that

"Plaintiff, a Chinese-American, was employed by defendant American Airlines for over seventeen years as an airplane mechanic. During his employment, plaintiff maintained an absolutely perfect record.

"Plaintiff was discharged for taking disposable items of a value of less than $2.00 from a terminating flight . . . [consisting of] day old sandwiches and cartons of milk, two small tubes of disposable plastic cups, one can of cola and one piece of day old pie . . .

\* \* \* \* \* \*

". . . Plaintiff was scheduled to work two eight hour shifts with only eight hours in between. Plaintiff planned on sleeping in his car, rather than driving to and from his house, and planned on snacking on some of the food during the period between shifts."

---

3. See, e. g., *United States v. Ritter*, 540 F.2d 459 (C.A. 10, 1976), *cert. denied* 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1977). But compare the concurring opinion of Judge Gee in *Parrish v. Board of Com'rs of Alabama*, above, 524 F.2d at 105, raising serious questions concerning the validity and continuing vitality of the *Berger* rule.

4. That this is true is implicit from the decision of the Supreme Court in *United States v. Grinnell*, 384 U.S. 563, 580–583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) (see footnote 8, below). See, also, *Foster v. Medina*, 170 F.2d 632, 633–634 (C.A. 2, 1948); *Parrish v. Board of Com'rs of Alabama*, above, 524 F.2d at 100–101.

The complaint names American Airlines and Local 505, Transport Workers Union, as defendants. It charges that the Union failed to represent plaintiff adequately in the arbitration that followed and upheld plaintiff's discharge and that American violated plaintiff's civil rights by allegedly singling him out for discharge by reason of his race. A jury trial was demanded.

The answer filed by the Union admitted the material allegations summarized above, other than the claim of inadequate representation.

The action was reassigned to the undersigned in August, 1976, after various preliminary proceedings had occurred before another judge. After consideration of the allegations of the complaint quoted above, admitted by the defendant Union, although denied by American, the Court determined that settlement of the action should be promptly and seriously explored, and issued the order referred to above.

The affidavit of Michael B. Readdy, personnel manager of American Airlines, sets forth certain statements said to have been made by the Court in the course of that Status and Settlement Conference; relevant excerpts from the affidavit are quoted in the margin.[5] In substance, they reflect the Court's expression of outrage over the extreme penalty of discharge administered to plaintiff for the offense described in the complaint.

█ It is settled that the basis for disqualification for bias and prejudice must be extra-judicial statements or conduct. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Davis v. Board of School Commissioners*, 517 F.2d 1044, 1051 (C.A. 5, 1975). Defendant argues that the statements complained of meet that test first, because they were not based on "evidence" before the Court, and, second, because the question of the merits of plaintiff's discharge was not relevant to the issues before the Court.

Taking up the second claim first, plaintiff's complaint against American is based on alleged race-based discrimination. Whether the discharge was based on the merits of plaintiff's conduct or was merely pretextual is therefore a potential issue in the case. Cf. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Since evidence of the discharge would therefore be admissible at trial, and plaintiff had demanded a jury trial, the appearance to and effect on the jury of the discharge was also relevant to the evaluation of the case for settlement purposes.

With respect to the question whether the Court's statements were based on "evidence", the allegations of fact on which they were based are set forth in the parts of the complaint quoted above which, though denied by American, were admitted by the Union. Defendant appears to contend that any expression not based on evidence properly admitted in the course of a trial must be regarded as extra-judicial. That contention, if accepted, would hold potentially disastrous consequences for the management of the business of the courts.

The challenged statements were made in the course of a Status and Settlement Conference. They reflected the Court's reaction to the facts disclosed by the pleadings. If comments made by a court in the course

5. "5. During the course of that status conference, and before hearing any comments from counsel for American Airlines, Judge Schwarzer stated that he was outraged by the fact that in this day and age a man's life could be ruined, because he stole a few sandwiches. After counsel for American Airlines explained that Fong was discharged for violation of a rule that was both long-standing and uniformly applied, and of which Fong had knowledge, Judge Schwarzer repeated his comment.

"6. Judge Schwarzer also observed that he had experience in labor matters and that he had never heard of discharges being sustained for a theft of this character.

"7. And, when counsel for American stated that he had certainly heard of discharges being sustained in these circumstances, Judge Schwarzer stated that under the circumstances American should give serious thought to disqualifying him from presiding over that action.

"8. Judge Schwarzer then stated that there was a good deal of union responsibility and that the union should be fighting to overturn the decision of the arbitrator."

of pretrial proceedings, based on matters disclosed by the case file at that time were regarded as extra-judicial, the court's ability to promote the settlement of civil litigation would be crippled. Judicial intervention in the settlement process, even if not universally favored or practiced, is an absolute necessity in the federal judicial system, burdened as it is by a staggering and ever-growing case load.[6] Without that intervention, and the resultant volume of pretrial settlements, the federal courts would be hopelessly congested with little chance for civil litigants who must have a trial to get one, at least within a reasonable time. Conversely, that intervention frequently helps to avoid the expense of litigation, thereby serving the purpose of the Federal Rules of Civil Procedure "to secure, the just, speedy, and inexpensive determination of every action." Rule 1, Fed.R.Civ.Pro.

Intervention may, of course, take many different forms depending on the personality, style and experience of the individual judge. It may, among others, take the form of an expression by the judge of his reaction to the allegations, admissions and denials contained in the pleadings and his evaluation of each party's prospects of success in the litigation. To subject judges to the risk of disqualification on the basis of statements of this kind would jeopardize their effectiveness as catalysts in the settlement process.[7]

■ That is not to say that statements reflecting lack of impartiality acquire immunity because they are made in the setting of settlement efforts. It does mean, however, that such statements should not automatically be considered extra-judicial because not based on trial evidence.[8]

■ Evaluation of the statements set forth in defendant's affidavit in light of the Congressional purposes "to promote public confidence in the impartiality of the judicial process" leads the Court to the conclusion that they are not sufficient to afford a "reasonable basis" for "a reasonable doubt concerning the judge's impartiality . . . in the mind of the reasonable man". Reading those statements in context, as the

---

6. By way of illustration, the most recent Director's Report to the Judicial Conference of the United States on the Business of the United States Courts, dated March 10, 1977, reflects that the filing workload per authorized district court judgeship has grown from 330 cases in 1965 to 430 cases in 1976 and is projected to rise to 444 cases in 1977. The crucial importance of settlement to the management of the District Courts' case load is further demonstrated by the fact that more than ninety per cent of all civil cases are terminated without trial. See, e. g. Annual Report of the Director of the Administrative Office of the United States Courts 1975, p. 372.

7. It is, of course, open to the judge and the parties to have settlement conferences referred to another judge who will not try the case. As an abstract proposition, this may on balance be the most desirable course to follow. But the sheer numbers referred to in the preceding footnote make it plain enough that it is a practical impossibility for judges to refer more than a fraction of their civil case load to other judges for settlement conferences. For such references to be manageable, they must be largely restricted to cases scheduled for bench trials and in which settlement negotiations have progressed beyond mere preliminary discussion.

8. See, *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), upholding Judge Wyzanski's denial of a motion to disqualify him based on remarks made by him during pretrial and trial proceedings indicating that he favored more severe relief against defendant than the government was asking. The Court's opinion states in relevant part:

"The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case . . . Any adverse attitudes that Judge Wyzanski evinced toward the defendants were based on his study of the depositions and briefs which the parties had requested him to make. What he said reflected no more than his view that, if the facts were as the government alleged, stringent relief was called for."

The Court notes, in this connection, that the theft, as described in the papers filed in support of American's motion, is made to appear considerably more serious than it appeared to the Court at the Status and Settlement Conference on the basis of the allegations in the complaint to the effect that it involved only "disposable items of a value of less than $2.00 . . . ."

Court must, it appears that they were made in the course of a conference called in an effort to bring about settlement, that the cited statements represent only a fragment of the discussion, that in the course of that discussion the Court also expressed doubts about plaintiff's ability to get to the jury and urged all parties to try to reach a settlement agreement, and that the Court's statements concerned matters bearing on the merits of the case, not any predisposition for or against any party or counsel.[9]

For the reasons stated, the Court finds and concludes that the facts and reasons set forth in defendant's affidavit are not sufficient within the meaning of Sections 144 and 455. The Court nevertheless accepts, without reservation, the representation of defendant's counsel that the motion to disqualify was made in good faith. Counsel's duty to his client at times requires that he make hard and unpopular choices. The Court has a corollary duty to make hard and unpopular decisions where it considers them to be correct.

Accordingly, it is ordered that the motion to disqualify be and it hereby is denied.

A status conference is set for May 6, 1977, at 9:30 A.M., to schedule pretrial and trial dates.

**9.** The responding affidavit filed by plaintiff states in relevant part:

"4. At the conference Judge Schwarzer expressed the view that the litigation was enormously costly in terms of lawyers' time and personal tragedy, and that settlement was a reasonable solution that would benefit both parties.

"5. The Judge expressed the opinion that if the plaintiff got his case before a jury, although he didn't know if he could get that far, there could be a large award against the airlines.

"6. The Judge expressed the view that the permanent discharge of an employee of seventeen years for the first time offense of pilferage of some leftover food was shocking.

"7. Judge Schwarzer expressed the hope and belief that the parties could fashion a remedy which could preserve the integrity of the arbitral process and provide the plaintiff with some relief.

"8. The Judge expressed no view as to what specific relief should be afforded.

\* \* \* \* \* \*

"11. At one point defense counsel for Defendant American Airlines, Inc. stated to the Judge words to the effect that, 'If you feel that way perhaps you should disqualify yourself', to which the Judge responded, 'If you believe such a motion is appropriate you should make it'."