**In re Betty HAAS and Jerry Haas, Debtors.**

**J. Daniel Barna, Ph.D., et al, Plaintiffs,**

**v.**

**Jerry Haas and Betty Haas, Defendants.**

**Bankruptcy No. 01–34628.**
**Adversary No. 01–3173.**

United States Bankruptcy Court, S.D. Ohio, Western Division at Dayton.

March 14, 2003.

David B. Grieshop, Dayton, OH, for defendants.

Thomas R. Noland, Dayton, OH, Chapter 7 Trustee.

### MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' JOINT MOTION FOR RECUSAL AND FOR STAY OF FURTHER PROCEEDINGS

JOHN E. HOFFMAN, Jr., Bankruptcy Judge.

This matter is before the Court on the Plaintiffs' Joint Motion for Recusal in the Above–Captioned Matter/Motion for Stay of Further Proceedings (the "Recusal Motion")(Adv.Doc. 56–1) filed February 28, 2003 by Plaintiffs J. Daniel Barna, Ph.D. ("Barna"), Patrick J. Conboy, P.C. ("Conboy"), and Frank M. Payson, P.C. ("Payson"). The Recusal Motion seeks the re-

cusal of the undersigned judge and a stay of the trial in this matter pending rulings on the Recusal Motion and any subsequent appeals.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2).

## II. Background

This adversary proceeding arises from claims by Barna, Conboy, and Payson (collectively, the "Plaintiffs") based on unpaid bills for psychological and legal services provided to the debtors Betty and Jerry Haas ("Defendants" or "Debtors"). The services in question— legal services provided by Payson and Conboy, and psychological services provided by Barna— were rendered in connection with wrongful termination litigation brought by the Debtors in state court against the former employer of Ms. Haas (the "State Court Action").

The litigation in this adversary proceeding, which was commenced on October 15, 2001 by the Plaintiffs' filing of a Complaint to Determine Dischargeability of Certain Debts Under 11 U.S.C.A. § 523/Complaint Objecting to Discharge of Debtors Under 11 U.S.C.A. § 727 (the "Complaint")(Adv.Doc. 1–1), has been contentious. A preliminary pretrial conference scheduled for January 14, 2002 was cancelled and a show cause order issued after Defendants failed to file a preliminary pretrial statement as ordered. After Defendants responded to the show cause order by filing the preliminary pretrial statement, the Court rescheduled the conference. At the rescheduled pretrial conference (the "Pretrial Conference") the Court discussed the background and status of the litigation with Barna, Conboy, Payson, and

David M. Grieshop ("Grieshop"), counsel for the Defendants. As part of this colloquy, the Court advised Plaintiffs that obtaining a judgment of nondischargeability for a debt arising from an unpaid bill is generally an uphill battle. The Court pointed out that virtually every creditor in a bankruptcy case has been promised payment, either expressly or impliedly, and the mere fact of nonpayment, standing alone, does not establish fraud. Plaintiffs were instructed to familiarize themselves with the decisional authority interpreting § 523(a)(2)(A) of the Bankruptcy Code, which governs the dischargeability of debts for "money, property, services, or an extension, renewal, or refinancing of credit" obtained through fraud. Payson advised the Court that the legal/psychological services in question were provided by the Plaintiffs after they received an assurance from Ms. Haas that she had secured loans and/or mortgages (or was in the process of doing so) in order to obtain the funds necessary to pay the Plaintiffs. The Court also advised the Plaintiffs that they would be required to prove that they had justifiably relied on Ms. Haas' alleged misrepresentation as a prima facie element of their § 523(a)(2)(A) claim. The Court noted that meeting their burden of proof with respect to the justifiable reliance prong of their case could prove difficult for the Plaintiffs since they apparently continued to provide professional services without payment for an extended period of time after Ms. Haas allegedly stated that she would secure loans/mortgages in order to settle their invoices. During the Pretrial Conference, the parties raised the possibility of submitting an agreed order granting relief from stay to permit the fee dispute to be mediated.[1]

---

1. Although the possibility of mediation was broached at the Pretrial Conference, the parties did not ask the Court to appoint a mediator. The Court therefore surmised that the

On March 6, 2002, the Court entered its Pretrial Scheduling Order Following Pretrial Conference (the "Scheduling Order") (Adv.Doc. 12–1). The Scheduling Order established a June 21, 2002 discovery cut-off date and set a trial date of September 3, 2002.

On June 21, 2002, Plaintiffs filed a Motion to Extend Time to File Motions Related to Discovery (Adv.Doc. 13–1) and a Motion to Have Requests for Admissions Deemed Admitted (the "Admissions Motion") (Adv.Doc. 14–1) because Defendants had failed to respond to Plaintiffs' discovery requests. Both Motions were denied due to Plaintiffs' failure to provide proper notice in accordance with the Local Bankruptcy Rules (Adv. Docs. 15–1 and 16–1). The motions were refiled on July 10, 2002 in a form that complied with the Local Bankruptcy Rules (Adv. Docs. 19–1, 20–1, 21–1 and 22–1). Defendants responded to the motions (Adv.Doc. 24–1), and Plaintiffs filed a reply (Adv.Doc. 25–1). On August 16, 2002, Plaintiffs filed a Joint Motion for Continuance of the September 3, 2002 Trial Date (the "Joint Motion for Continuance") (Adv.Doc. 27–1) on the ground that they had been unable to complete discovery due to the Defendants' noncooperation.

Also on August 16, 2002, Defendants filed a Motion for Payment of Attorney Fees and Debtors' Costs Expended Pursuant to § 523(d) of the Bankruptcy Code (the "Attorney Fee Motion") (Adv.Doc. 26–1). Section 523(d) of the Code provides for an award of costs and attorney fees in the debtor's favor if the bankruptcy court finds that the position of a creditor

in a § 523(a)(2) action was not substantially justified. Plaintiffs filed a response to the Attorney Fee Motion on August 29, 2002 (Doc. 37–1), arguing that their Complaint was substantially justified under the statute. The Court entered an order on September 5, 2002 (Adv.Doc. 39–1) that deferred a ruling on the Attorney Fee Motion pending the outcome of the trial on the Complaint.

On August 19, 2002, Plaintiffs filed a Motion to Compel Discovery from Defendants (the "Motion to Compel") (Adv.Doc. 29–1). On August 22, 2002, the Court conducted a telephonic status conference at which it took up the Admissions Motion, the Motion to Compel, and the Joint Motion for Continuance (the "Status Conference").[2] During the Status Conference, the Court admonished the Defendants' due to their failure either to respond to discovery in a timely manner or seek an extension of time to do so. And, in view of the recently filed Attorney Fee Motion, the Court again cautioned the Plaintiffs regarding their burden of proof under § 523(a)(2)(A). Following this discussion, Payson suggested that the Court was biased against the Plaintiffs and should recuse itself. The Court responded by informing Payson that if he believed there were grounds for recusal, he was free to file the appropriate motion seeking that relief.

The Court entered an order on August 29, 2002 in which it denied the Admissions Motion, finding that Plaintiffs had not shown that they had been prejudiced by the Defendants' untimely responses (the "Discovery Order") (Adv.Doc. 36–1).[3] The

---

mediation would occur under the auspices of the Dayton Bar Association or in conjunction with the underlying State Court Action.

2. The Court's docket reflects the August 22, 2002 telephone conference as a status conference. The Recusal Motion refers to this conference as a pretrial conference. When refer-

encing this conference, the Court will use the term "Status Conference."

3. Pursuant to Fed.R.Civ.P. 36(a), if a party fails to answer a request for admission within 30 days (as the Defendants did here), the requested items are deemed admitted. Rule

Discovery Order also: (1) provided that to the extent that any of the Plaintiffs' requests for admission were admitted or denied in part, or denied for want of knowledge by the Defendants, their responses were to be amended to comply with Fed. R.Civ.P. 36(a); (2) granted the Motion to Compel; (3) directed Defendants to answer Plaintiffs' interrogatories and produce the documents they requested, or file objections to the discovery requests, by September 5, 2002; and (4) admonished Defendants and their counsel to comply with all rules of discovery in a timely and cooperative manner, failing which the Court would entertain a motion for sanctions.

On August 21, 2002, Payson filed a Request for This Court to Impose Monetary Sanctions Against Debtors and Attorney David Grieshop and/or Discipline Debtors' Attorney David M. Grieshop (the "Sanctions Motion")(Adv.Doc. 32–1). The Sanctions Motion alleged that Grieshop presented a falsified document to the Court— i.e., the Agreed Order Modifying Automatic Stay Imposed by Section 362 of the Code (the "Agreed Order") (Doc. 27–1) entered by the Court on June 19, 2002. The Agreed Order was tendered to the Court by Grieshop and contained a notation that Payson's signature was affixed in accordance with his telephone authorization. The Agreed Order lifted the stay to permit mediation of the fee dispute. Grieshop filed a response to the Sanctions Motion (Adv.Doc. 34–1) on August 27, 2002, asserting that he had engaged in no sanctionable conduct, since the Agreed Order had been presented to the Court at Payson's request and direction. Grieshop attached as an exhibit to his response a letter he had received from Payson asking for assistance in the preparation and filing of the Agreed Order. Payson filed a reply on August 29, 2002 (Adv.Doc. 38–1), alleging that he had not expressly authorized the filing of the Agreed Order.

On September 11, 2002, the Plaintiffs filed a Motion for Reconsideration of the Court's August 29, 2002 Order Denying Plaintiffs' Request to Have Admissions Deemed Admitted Pursuant to Fed. R.Civ.P. 36(b) or in the Alternative, Motion to Have Requests for Admissions # 4, 5, 6, 7, 13, 14, 15, 16, 17, 37, 38, and 39 Deemed Admitted and Motion for Sanctions Against Defendants and/or Their Attorney for Violating the Court's August 29,

36(b), however, provides in pertinent part that: "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Fed.R.Civ.P. 36(b). Thus, the Court has authority to relieve a party from an admission made by default if: (1) presentation of the merits of the case will be subserved; and (2) the party who obtained the admission will not be prejudiced by the withdrawal. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir.1997). A federal trial court has "considerable discretion over whether to permit withdrawal or amendment of admissions." *Id.* (quoting *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir.1991)). The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the default admission now will have to convince the fact finder of its truth; rather, it relates to the difficulty a party may face in proving its case (for example, by the unavailability of key witnesses) caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission. *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir.2001); *Kerry Steel*, 106 F.3d at 154. Rule 36(b)'s two-prong standard recognizes the strong public policy favoring the adjudication of cases on the merits. *Perez v. Miami–Dade County*, 297 F.3d 1255, 1265 (11th Cir. 2002) ("Rule 36(b)'s two-part test . . . 'emphasizes the *importance of having the action resolved on the merits. . . .*'" (quoting Fed. R.Civ.P. 36 Advisory Committee note)).

2002 Order by Failing to Answer Propounded Interrogatories and Document Requests by September 5, 2002 (the "Motion for Reconsideration") (Adv.Doc. 42–1–2). Plaintiffs alleged that Defendants failed to respond to their discovery requests by September 5, 2002 as required by the Court's August 29, 2002 order. Defendants filed their response (Adv.Doc. 44–1) to the Motion for Reconsideration on September 17, 2002. In the response, the Defendants alleged that their responses to Plaintiffs' discovery had been served by certified mail on September 4, 2002, but that Payson had refused delivery. Plaintiffs filed a reply (Adv.Doc. 45–1) on September 26, 2001. The Sanctions Motion and the Motion for Reconsideration, and the responses thereto, were set for hearing on October 31, 2002 (the "Sanctions Hearing").

The Sanctions Hearing was convened at 2:00 p.m. on October 31, 2002 and continued into the evening. At the conclusion of the Sanctions Hearing, the Court entered oral findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052. The Court's oral ruling denied both the Sanctions Motion and the Motion for Reconsideration on the grounds that each was devoid of merit. In its oral ruling, the Court found that the disputes at issue were caused by miscommunication and misunderstandings that could have been avoided by common courtesy and professionalism. In its ruling the Court noted that Payson, in his letter requesting Grieshop's assistance in obtaining an order granting relief from stay,

> indicated that you say you're not really familiar with the bankruptcy court's procedures. On the record today you said you don't appear frequently in bankruptcy court. But the Court's expectation is

that parties that practice before this Court will take the steps necessary to familiarize themselves with the Court's local rules. And if they can't come up to speed or get up … the learning curve, then they need to associate themselves with local counsel or bankruptcy counsel that are familiar with the Court's procedures and the local rules.

> In this case, we've had at least three … or four instances now where you did not comply with the Court's local rules.... And I have to say, Mr. Payson, if we have a fifth time, I'm going to require you to retain bankruptcy counsel so that this matter can proceed without any … further procedural disruptions.

Sanctions Hearing Transcript ("Tr.") at 136–138.[4]

The trial of this matter was reset to December 23, 2002, but upon learning that both sides anticipated that the presentation of evidence would require a minimum of two days, and not wishing to recess a trial for the holidays, the Court reset the matter to the first available two-day slot on its trial calendar for which neither party had a scheduling conflict. The new trial dates selected were March 19 and 20, 2003.

On February 28, 2003, the Plaintiffs filed the Recusal Motion.

### III. The Recusal Motion

The Recusal Motion, which is brought pursuant to 28 U.S.C. §§ 144 and 455, alleges that the undersigned judge is biased against the Plaintiffs based on statements made at the August 22, 2002 Status Conference and rulings against the Plaintiffs made at the October 31, 2002 Sanctions Hearing. Specifically, the Recusal Motion states that during the course of the Status Conference, the Court made statements about Plaintiffs' discovery requests

---

**4.** The transcript of the Sanctions Hearing, which includes the Court's ruling on the

Sanctions Motion and Motion for Reconsideration, is docketed at Adv. Doc. 55–1.

and what objections were appropriate to such discovery requests, thereby essentially advising Defendants' counsel how to object to certain questions and how to answer certain discovery requests. Recusal Motion at 2–3. The Recusal Motion also states that the Court made statements to the effect that Plaintiffs would not likely be able to meet their burden of proof at trial, despite the fact that no evidence had been presented. *Id.* at 3. According to the Plaintiffs, the Court has prejudged this matter, which has had a negative impact on their attempts to settle the case. *Id.* The Recusal Motion further alleges that during the Status Conference, the Court "laughed at the Plaintiffs for believing Defendant Betty Haas' lies and her promises to pay for our services, stating that the Plaintiffs should have known better than to rely on such promises," and that the Court "effectively coached" Defendants' counsel as to how he should conduct his clients' defense. *Id.* The Recusal Motion recounts that Payson suggested at the Status Conference that the undersigned judge was biased against the Plaintiffs and in favor of the Defendants and should therefore recuse himself, and that the judge stated the Plaintiffs should file a motion for recusal. *Id.* Further, the Plaintiffs argue that because the Court refused to sanction Defendants' counsel following the Sanctions Hearing, it is apparent that the Court favors Defendants' counsel, "who practices regularly in Bankruptcy Court," over the Plaintiffs, who are not regular bankruptcy practitioners. Barna, Payson, and Conboy Affidavits, ¶ 9, Recusal Motion Exhibits A, B, and C. According to Payson, the Court has singled him out for attack and criticism, even though he is but one of three Plaintiffs. Recusal Motion at 4. He argues that "[a]s an officer of the Court I believed I was required to notify the Court of Grieshop's behavior, but instead it was I who was unfairly criticized by Judge Hoff-

man." Payson Affidavit, ¶ 12, Recusal Motion Exhibit B.

## IV. Legal Analysis

### A. Recusal

Federal Rule of Bankruptcy Procedure 5004 governs disqualification of a bankruptcy judge. The rule provides that:

(a) **Disqualification of Judge.** A bankruptcy judge shall be governed by 28 USC § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.

Fed. R. Bankr.P. 5004(a). Section 455 of the United States Code states, in relevant part, that:

(a) Any justice, judge, or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ....

28 U.S.C. § 455(a).

Although Plaintiffs have cited 28 U.S.C. § 455(a), they rely primarily on 28 U.S.C. § 144 as the basis for the relief requested in the Recusal Motion. Section 144 states:

Whenever a party to a proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the

reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. According to the Plaintiffs, they have established a basis for recusal under § 144 because the Recusal Motion is timely and the accompanying affidavits are legally sufficient.

■ There is a substantial body of case law holding that 28 U.S.C. § 144 applies only to district court judges and does not govern motions for recusal of a bankruptcy judge, including a decision from the District Court authored by Chief Judge Rice. *See Smith v. Hale (In re Smith)*, 317 F.3d 918, 932 (9th Cir.2002); *Dues v. Farm Credit Servs. of MidAmerica, ACA (In re Dues)*, Nos. C–3–94–445, C–3–95–14 slip op. at 8 (S.D.Ohio Sept. 17, 1997) (Rice, C.J.); *Sylver v. Sec. Pac. Fin. Servs., Inc. (In re Sylver)*, 214 B.R. 422, 426 (1st Cir. BAP 1997); *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 221 (9th Cir. BAP 1996); *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 757 (1st Cir. BAP 1982); *In re Celotex Corp.*, 137 B.R. 868, 874 (Bankr. M.D.Fla.1992). Accordingly, the requirements imposed by 28 U.S.C. § 144— that the judge assume that the facts asserted in the affidavit are true and examine the affidavit as to timeliness and legal sufficiency (*see In re City of Detroit*, 828 F.2d 1160, 1164 n. 2 (6th Cir.1987)) (*citing Berger v. United States*, 255 U.S. 22, 32, 41 S.Ct. 230, 65 L.Ed. 481 (1921))— do not apply here. *Goodwin*, 194 B.R. at 221 ("Bankruptcy judges are subject to recusal under section 455.... Thus, the requirement of section 144 that the judge assume

that the facts asserted in the affidavit are true and examine them only to determine their legal sufficiency ... has no application here." (citations omitted)). *Cf. Fong v. Am. Airlines, Inc.*, 431 F.Supp. 1334, 1337 (N.D.Cal.1977) ("[In the context of recusal motion brought under § 455(a),] the statutory framework does not result in automatic disqualification upon the filing of an affidavit.... [T]he judge may pass on the sufficiency of the facts and reasons stated in the affidavit ... as well as the record and pleadings on file in the action.").

■ While 28 U.S.C. § 455 imposes a duty on the Court to recuse where any of the statutory grounds exist, there is a corresponding duty not to do so if cause for recusal has not been shown. *In re Computer Dynamics, Inc.*, 253 B.R. 693, 698 (E.D.Va.2000) ("[A] judge is equally obliged not to recuse himself when there is no necessity, as he is to recuse himself when there is."); *Armstrong v. Potter (In re Potter)*, 2002 WL 31802978 n. 1 (10th Cir. BAP Oct. 8, 2002) ("A judge's duty to hear cases is not so ephemeral that it dissipates at the first sight of any potential bias or partiality toward one of the litigants."); *In re Womack*, 253 B.R. 245, 246 (Bankr.E.D.Ark.2000) ("Although the Court has a duty to recuse where any of [the § 455] factors exist, there is a concomitant duty not to recuse on unsupported, irrational or tenuous speculation."). As Justice (then Judge) Breyer explained in *In re Allied–Signal, Inc.*, 891 F.2d 967, 970 (1st Cir.1989), courts must exercise great care in considering motions for recusal so as to discourage their use for purposes of judge shopping or delay:

When considering disqualification, the district court is *not* to use the standard of mere ... suspicion ... that is because the disqualification decision must reflect *not only* the need to secure pub-

lic confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

*See also In re Nat'l Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir.1988) ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping." (citation omitted)); *United States v. Pungitore,* 15 F.Supp.2d 705, 715 n. 4 (E.D.Pa.1998) ("A liberal recusal policy would encourage judge shopping."); *Scott v. Pryor (In re Chandler's Cove Inn, Ltd.),* 74 B.R. 772, 773 (Bankr.E.D.N.Y. 1987) ("[R]ecusal motions which are too liberally granted are tantamount to unilateral 'judge shopping' and may be used for a delaying tactic, for their disposition requires a serious investment of judicial time and thought.").

■ Generally, recusal on grounds of partiality arises in one of two circumstances: when the judge forms opinions of the litigants based on information learned outside the course of judicial proceedings (the "Extrajudicial Source Doctrine"), or when a judge whose information is limited to that revealed during the course of judicial proceedings forms a favorable or unfavorable opinion so extreme that fair judgment appears impossible (the "Pervasive–Bias Exception"). *See generally* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2922 (2d ed.1995). Discussing these concepts in its decision affirming a district court's denial of a motion for recusal made under § 455, the Supreme Court, in *Liteky v. United States,* 510 U.S. 540,

555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), explained:

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.,* 384 U.S. [563], at 583, 86 S.Ct. [1698], at 1710[, 16 L.Ed.2d 778 (1966)]. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks made during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.,* at 28[,

41 S.Ct. 230] (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administration— remain immune. *See also Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams),* 31 F.3d 389, 396 (6th Cir.1994) (following *Liteky* and denying recusal motion where there was no showing that the bankruptcy judge had displayed deep-seated antagonism toward the movant or favoritism toward the opposing party).

■■■ The standard for determining whether a judge should be disqualified is an objective one: whether a reasonable person with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned. *Lopez v. Behles (In re Am. Ready Mix, Inc.),* 14 F.3d 1497, 1501 (10th Cir.1994), *cert. denied,* 513 U.S. 818, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994); *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987); *United States v. Story,* 716 F.2d 1088, 1090 (6th Cir.1983).

The proper test ... is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

*United States v. Cowden,* 545 F.2d 257, 265 (1st Cir.1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). As the Sixth Circuit explained, "[t]he standard is an objective one; hence, the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." *United States v. Sammons,* 918 F.2d 592, 599 (6th Cir.1990) (quoting *Browning v. Foltz,* 837 F.2d 276, 279 (6th Cir.1988), *cert. denied,* 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989)). The Seventh Circuit has elaborated on the necessity and desirability of this objective recusal test:

An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person .... Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will *apply* rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

*Hook v. McDade,* 89 F.3d 350, 354 (7th Cir.1996) (quoting *In re Mason,* 916 F.2d 384, 386 (7th Cir.1990)).

■■■ Here, the matters alleged to constitute bias stem either from colloquies between the Court and Plaintiffs during the Pretrial and Status Conferences or the adverse rulings at the conclusion of the Sanctions Hearing. There is no allegation that the Court's actions have been influenced by any information learned outside of judicial proceedings. Thus, the Extrajudicial Source Doctrine does not come into play. A litigant relying on the Pervasive Bias Exception— i.e., alleging bias on the basis of events occurring in the course

of the current proceedings— must show that those events display a deep-seated and high degree of antagonism or favoritism. *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147. As stated by Chief Judge Waldron of this Court:

> If counsel is not satisfied with the court's ruling, a multi-tiered appellate process provides ample opportunity for counsel to continue to assert his position. A court colloquy questioning counsel's legal arguments set forth in motions and memoranda previously filed in connection with a proceeding, followed by a decision in which the court does not adopt those same legal arguments of counsel cannot provide an adequate basis for a motion for removal.

*In re Dougan*, No. 3–87–00180, slip op. at 7 (Bankr.S.D.Ohio Jan. 12, 1988). *Accord Sylver*, 214 B.R. at 422, 427–28. *See also Miami Employees Fed. Credit Union v. Turner (In re Turner)*, 69 B.R. 95, 96 (Bankr.S.D.Ohio1987) (Perlman, J.) (holding that statements directed to counsel during pretrial conference on dischargeability complaint are not indicative of any bias or prejudice toward a party, and likewise, statements by court suggesting that defendant file a counterclaim do not reflect bias or prejudice since defendant had stated that a violation of the stay had occurred and court has the "duty ... to see that the laws of the United States Bankruptcy Code are enforced.").

■ The fact that the Court urged Plaintiffs to review the case law interpreting § 523(a)(2)(A), directed them to focus on the justifiable reliance element of their prima facie case, and pointed out that a judgment of nondischargeability cannot be premised solely on a debtor's breach of a promise to pay a prepetition debt does not establish a basis for recusal. Nor do these comments reflect that the Court prejudged this case or attempted to coach opposing counsel as to defense strategy. Rather, such statements were consistent with the Court's responsibility to use its resources efficiently by fleshing out the issues to be tried, focusing parties on the elements of their claims for relief, and ensuring effective presentation of evidence at the trial stage of the proceeding. *See United States v. Wilkerson*, 208 F.3d 794, 798 (9th Cir.2000) (holding that court's statements at pretrial proceedings did not constitute grounds for recusal and stating that "a judge who expresses doubts about the merits of a particular case is not delinquent"); *Smith v. Sentry Ins.*, 752 F.Supp. 1058, 1061 (N.D.Ga.1990) (finding that court's comments "on the merits of [the] case during the course of the pretrial settlement conference" did not give rise to a basis for recusal); *Fed. Deposit Ins. Corp. v. Glickman*, 450 F.2d 416, 419 (9th Cir. 1971) ("A district judge is given broad discretion in supervising the pre-trial phase of litigation, with a view toward sifting the issues in order that the suit will go to trial only on questions involving honest disputes of fact or law."). As the district court aptly observed in *Fong*:

> [C]omments made by a court in the course of pretrial proceedings .... may ... take the form of an expression by the judge of his reaction to the allegations, admissions and denials contained in the pleadings and his evaluation of each party's prospects of success in the litigation. To subject judges to the risk of disqualification on the basis of statements of this kind would jeopardize their effectiveness as catalysts in the settlement process.

431 F.Supp. at 1338–39.

■ Likewise, adverse rulings by the Court at the Sanctions Hearing do not constitute a basis for recusal. Judicial rulings and remarks not based on an extrajudicial source "almost never constitute a

valid basis" for recusal. *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147. As set forth above, disqualification is warranted only when judicial rulings and remarks not based on extrajudicial sources rise to "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id. See also Grove Fresh Distribs., Inc. v. John Labatt, Ltd.,* 299 F.3d 635, 641 (7th Cir. 2002) ("[J]udicial rulings are grounds for appeal, not recusal."); *Lopez,* 14 F.3d at 1501 ("Adverse rulings alone are insufficient grounds for disqualification....").

Payson argues that he was singled out for criticism at the Sanctions Hearing, and that such criticism evidences bias and prejudice against him that makes it impossible for the Court to impartially judge his case. He bases this argument in part on an allegation that the Court favors Defendants' counsel, who Plaintiffs characterize as a regular practitioner in bankruptcy court, over Payson, who does not have a regular bankruptcy practice.[5] First, a review of the record reflects that it was Payson alone who filed and prosecuted the Sanctions Motion. It therefore would not have been appropriate to direct criticism regarding the Sanctions Motion toward the other two Plaintiffs, who did join in the request for relief made by Payson. Second, during the course of this bitterly-disputed adversary proceeding, Defendants' counsel has not been immune from the Court's criticism; he also has been admonished for his failure to file a pretrial statement as ordered and his failure to respond timely to discovery requests.[6] Third, Payson has made a point more than once in these proceedings of pleading ignorance of bankruptcy procedures. Rather than showing bias or prejudice, the Court has reminded Payson that litigants, even pro se litigants, are expected to know and follow the applicable national and local bankruptcy rules when practicing in a bankruptcy court. Otherwise the playing field would be tilted in favor of a pro se litigant, which would, in fact, constitute unacceptable bias and favoritism. Payson's argument rings particularly hollow because he is, in fact, an attorney and presumably has more ready access to bankruptcy rules and case law and is presumably more knowledgeable and experienced in litigation matters than the typical pro se litigant.

The Court has resisted the temptation to offer a point-by-point response to the factual allegations contained in the Recusal Motion and accompanying affidavits. Suffice it to say that the Court strenuously disputes both the factual recitation contained in the Recusal Motion and the Plaintiffs' characterization of the colloquies that have taken place at the Pretrial Conference, Status Conference, and Sanctions

---

**5.** During the undersigned judge's three years on the bench, Grieshop has personally appeared before the Court only once—in this adversary proceeding. Payson has personally appeared twice—in this adversary proceeding and in a Chapter 13 case in which he represented unsecured creditors who sought and obtained relief from the automatic stay. Neither Conboy nor Barna has appeared before the Court prior to the commencement of this case.

**6.** Referring to the Court's admonishment resulting from Defendants' failure to respond in a timely fashion to Plaintiffs' requests for admission, Grieshop testified as follows at the Sanctions Hearing:

> We had a telephone pre-trial conference. And I believe it was the 20th of August, or 22nd of August, at which time I was admonished by this Court, an admonishment which I freely accepted and admitted to. The first time in thirty-one (31) years that I had been admonished by the Court—by a court. I didn't take it personally, I took it professionally. I knew I was in error, ....

Tr. at 110.

Hearing.[7] But that it is of no moment. For even if Plaintiffs' allegations are accepted as true, they nevertheless fall far short of establishing cause for recusal. *Liteky,* 510 U.S. at 557, 114 S.Ct. 1147 ("[Only] an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings [will trigger a judge's recusal under § 455]."); *United States v. Howard,* 218 F.3d 556, 566 (6th Cir.2000) ("A predisposition acquired by the judge during the course of the proceedings will only constitute impermissible bias when 'it is so extreme as to display clear inability to render fair judgment.'" (quoting *Liteky,* 510 U.S. at 551, 114 S.Ct. 1147)); *Pungitore,* 15 F.Supp.2d at 712 ("The mere fact that a judge who presides at a trial may be 'exceedingly ill disposed toward [a party]' ... does not thereby render him 'recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings....'" (quoting *Liteky,* 510 U.S. at 550–51, 114 S.Ct. 1147)).

■ The allegations contained in the Recusal Motion and supporting affidavits "do not [establish] deep-seated favoritism towards [Defendants] or antagonism towards [the Plaintiffs]." *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147; *Adams,* 31 F.3d at 396. At most, they constitute a combination of adverse rulings (which alone are not sufficient grounds for disqualification, *see Liteky,* 510 U.S. at 555, 114 S.Ct. 1147), comments concerning possible weaknesses in Plaintiffs' case made at pretrial proceedings (which are not disqualifying, *see Fong,* 431 F.Supp. at 1339; *Smith,* 752 F.Supp. at 1061), and criticism stemming from Plaintiffs' failure to comply with requirements imposed by the Local Bankruptcy Rules (which likewise does not support recusal, *see In re Princeton Med. Mgmt.,* 248 B.R. 907, 912–13 (Bankr.M.D.Fla.2000) (holding that criticism of debtors and their counsel due to their "consistent pattern of noncompliance with court orders, Bankruptcy Code, Bankruptcy Rules, and Local Rules requirements" does not establish cause for recusal)). Taken together, these rulings and comments simply do not display "an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings." *Liteky,* 510 U.S. at 557, 114 S.Ct. 1147.

For the foregoing reasons, the Recusal Motion is **DENIED.**

## B. Request for Stay

■ The Recusal Motion contains a request that all further proceedings in this adversary proceeding be stayed pending a ruling on the Recusal Motion and the conclusion of any appeals process. The request for a stay is **DENIED.** No good

---

7. A particularly egregious example of the factual distortions contained in the Recusal Motion and accompanying affidavit is Plaintiffs' allegation that the Court suggested that "all bankruptcy petitioners lie." Recusal Motion at 3. Apparently the genesis of this statement is the Court's comment at the Pretrial Conference that a finding of nondischargeability must be based on more than a mere breach of a promise to pay, since every creditor in a bankruptcy proceeding has, either expressly or impliedly, been promised repayment. Furthermore, Plaintiffs' allegation that it "laughed at Plaintiffs for believing Betty Haas' lies," *see* Recusal Motion at 3, is nonsensical. As pointed out by Plaintiffs, there has yet to be a presentation of evidence, and thus no finding that Ms. Haas has lied. There certainly would have been no basis, therefore, for the Court to have "laughed at the Plaintiffs for believing Betty Haas' lies."

cause has been shown for a stay, and none of the elements required for granting a stay has been shown, i.e., the likelihood that the party seeking the stay will prevail on appeal, the prospect of irreparable harm to the movants if the stay is not granted, a relative certainty that no substantial harm will come to other parties if the stay is issued, and the relative absence of harm to the public interest if a stay is granted. *In re Barnes,* 119 B.R. 552, 557–58 (S.D.Ohio 1989); *In re Revco D.S., Inc.,* 118 B.R. 464, 466–67 (Bankr.N.D.Ohio 1990); *In re Baldwin United Corp.,* 45 B.R. 385, 386 (Bankr.S.D.Ohio 1984).

 Further, the Court notes that the judicial statements complained of by the Plaintiffs were made in the Status Conference on August 22, 2002. When Payson suggested that the Court recuse itself at that time, the Court correctly stated that recusal must be requested by filing a motion, which the Plaintiffs were free to do. The other statements and rulings complained of were made at the conclusion of the Sanctions Hearing on October 31, 2002. It was only at the end of February, 2003, with the trial less than three weeks away, that the Plaintiffs felt sufficiently aggrieved to file the Recusal Motion.[8] *See Am. Express Travel Related Servs. Co., Inc. v. Fraschilla (In re Fras-*

*chilla),* 235 B.R. 449, 459 (9th Cir. BAP 1999) (noting that the timing of a recusal motion "may affect the weight ascribed to the evidence said to be probative of bias or prejudice").

Accordingly, the Recusal Motion and the request for stay of proceedings are **DENIED.** The trial of this adversary proceeding will commence, as previously scheduled, on March 19, 2003, at 9:30 a.m.

**IT IS SO ORDERED.**

8. A strong argument can be made that the Recusal Motion should be denied purely on the basis of untimeliness. Under 28 U.S.C. § 455, a motion for recusal "is timely if it is made 'at the earliest possible moment' after [the movant] obtain[s] information of possible bias." *United States v. Yonkers Bd. of Educ.,* 946 F.2d 180, 183 (2d Cir.1991) (quoting *Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir.1987)). *See also In re Big Rivers Electric Corp.,* 213 B.R. 962, 972 (Bankr. W.D.Ky.1997) (same); *In re Cooke,* 160 B.R. 701, 704 (Bankr.D.Conn.1993) (same). Once a movant becomes aware of facts on which a motion to disqualify is predicated, even a relatively brief delay in filing the motion may result in a finding of untimeliness. *Apple,* 829

F.2d at 334 (delay of two months after movant learned of facts allegedly requiring recusal rendered motion untimely); *Datagate, Inc. v. Hewlett–Packard Co.,* 941 F.2d 864, 871–72 (9th Cir.1991) (delay of six weeks rendered motion untimely), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *United States v. Int'l Bhd. of Teamsters,* 814 F.Supp. 1165, 1172 (S.D.N.Y.1993) (delay of two months after discovery of relevant facts rendered motion untimely); *Martin–Trigona v. Lavien,* 573 F.Supp. 1237, 1244–45 (D.Conn.1983) (delay of 12 days from the time movant indicated probability of recusal motion was excessive), *appeal dism'd,* 770 F.2d 157 (2d Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).